## YOUNG v. WESTERN UNION TEL. CO.

1 EVIDENCE responsive to allegations improperly permitted to remain in a pleading is competent.

2. DAMAGES—EXEMPLARY.—EVIDENCE AS TO BODILY DISCOMFORT suffered by reason of defendant's failure to deliver a telegram, is competent as basis of exemplary damages, under allegations of wilful or wanton default, and as having a causal connection between the wrongful act and the injury.

3. *Martin* v. *R. R.*, 32 S. C., 592, *distinguished from this.*

4. NONSUIT is improper in an action for intentional wrong and negligence upon failure of proof of intentional wrong.

5. DAMAGES—EXEMPLARY.—Facts that a telegram remained in possession of defendant company for fourteen hours without delivery, and absence of evidence tending to show effort to deliver, are circumstances proper to go to the jury as to reckless disregard of plaintiff's rights.

6. IBID.—COMPENSATORY.—Under the allegations of this complaint it was proper to instruct the jury that they might find compensatory damages.

7. TELEGRAMS—CONTRACTS.—When the sender of a telegram writes it on the form of the telegraph company, or of any other company, and delivers to the telegraph company, on which he directs the message sent subject to the terms and conditions printed on the back thereof, and which he in express terms agrees to, he is bound by all the reasonable terms and conditions printed on the back of the form.

Before ALDRICH, J., Richland, July, 1902.    Reversed.

· Action by Thomas C. Young against Western Union ·Telegraph Company.    From judgment for plaintiff, defendant appeals.

*Messrs. Smythe, Lee & Frost, R. W. Shand* and *George H. Fearons,* for appellant.

*Messrs. Smythe, Lee & Frost* cite : *As to evidence showing physical discomfort:* 32 S. C., 592; 9 Ech., 345; 154 U. S., 29; 43 S. C., 424; 8 Ency., 2 ed., 581, 583; 54 S. W., 825; 31 Fed., 134; 81 Fed., 670; 5 Ency. P. & P., 544, 603.

*There being no evidence warranting exemplary damages nonsuit should have been granted:* 61 S. C., 170; 64 S. C., 491; 60 S. C., 74; 54 S. C., 605; 57 S. C., 254; 35 S. C., 486, 501. *As to the sixty days condition:* 25 Ency., 1 ed., 798; 21 Wall., 264; 154 U. S., 1; 42 S. C., 368; 14 S. E. R., 94; 11 S. E. R., 874; 18 S. E. R., 1008; 27 S. E. R., 603; 4 S. R., 844; 54 Ark., 221; 65 N. Y., 165; 27 S. E. R., 312; 11 Col., 335; 19 S. W., 256; 26 S. C., 96; 62 S. C., 1; 39 S. E. R., 443.

*Messrs. John J. Earle* and *P. H. Nelson,* contra, cite: *As to evidence of physical discomfort:* 53 S. C., 214; 54 S. C., 498. *As to nonsuit on ground of failure of facts warranting exemplary damages:* 57 S. C., 228; 62 S. C., 335. *When written contract is not in evidence, terms thereof are for jury:* 62 S. C., 1; 26 S. C., 268.

January 10, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages arising out of the defendant's failure to deliver the following telegram: "April 17th, 1899. S. J. Justice, Hendersonville, N. C. Baby dead, bury Tweed's Chapel to-morrow, first train up. Have pa pick burial spot; meet us Fletchers."

The acts of wrong on the part of the defendant are thus alleged in the complaint:

"3. That although the said S. J. Justice was at his residence in the said city of Hendersonville during the entire day and evening of the 17th day of April, 1899, when said message could and ought to have been delivered to him, and although the residence was in easy reach of the defendant and within its regular delivery limits in said city, the defendant wilfully, wantonly and negligently failed to promptly deliver said message, and the same through the wilful, wanton and gross negligence of the said defendant was not delivered until about 9 o'clock of the 18th day of April, 1899.

"4. That the baby mentioned in said telegram was the

child of the plaintiff herein; that Tweed's Chapel is about six miles from Fletcher, which is not a regular delivery station of defendant; that Hendersonville is about sixteen miles from said Tweed's Chapel; that if said message had been delivered to the said S. J. Justice when it should and ought to have been delivered, he would have gone immediately to said Tweed's Chapel and would have had ample time to make all preparations for the funeral of the said baby and to meet said plaintiff at Fletcher; but by reason of the wanton, wilful and gross negligence of said defendant in not delivering said message to the said S. J. Justice until fully fourteen hours had elapsed from the time of its reception by the said defendant, the said S. J. Justice by using his greatest speed was unable to get to the said Tweed's Chapel in time to have any preparations for the funeral of the baby immediately after the arrival of the body on the early train, and was further unable to meet said plaintiff with carriages at Fletcher, six miles away, as a result of which, when the plaintiff with the body of his child reached Fletcher, there was an insufficient number of carriages, and he was compelled to walk for several miles over a rough mountain road, and when he finally reached Tweed's Chapel, no adequate preparations for the funeral had been made, and he was compelled to wait for several hours, much to his discomfort and pain, before his child could be buried; that by reason of this wanton, wilful and gross negligence of the defendant in failing to promptly deliver the said message as aforesaid, plaintiff was deprived of the comfort of having a proper reception of the body of his dead child both at Fletcher and Tweed's Chapel; was put to much bodily discomfort and delay, and subjected to great mental anguish and suffering, and was otherwise damaged in the sum of $1,950."

The defendant's answer was substantially a denial of the material allegations of the complaint. It also set up the affirmative defense that the plaintiff did not present his claim within sixty days after the alleged wrong of the

defendant, in accordance with the stipulation indorsed on the plaintiff's message. The jury rendered a verdict in favor of the plaintiff for $560.

The appellant's first and second exceptions are as follows: "1st. Because his Honor erred in permitting, against the objection of the defendant, the plaintiff to testify in response to the following question and questions of similar import: 'Did your father meet you at Fletcher?' The answer being 'He did not.' It being respectfully submitted that the sole object and effect of the said question and testimony was to exhibit to the jury the mental anguish suffered by the plaintiff on account of the failure of the defendant to deliver the telegram in question promptly; whereas it is submitted, that the cause of action herein arose before the Mental Anguish Act of 1901 became a law, and, therefore, such question and testimony was irrelevant and improper, and was harmful to the defendant and should not have been admitted. 2d. Because his Honor erred in permitting, against the objection of the defendant, the plaintiff to testify in response to the following question and questions of similar import: 'When you got to Tweed's Chapel, what arrangements had been made for the burial of your baby?' The answer to said question being: 'When we got there we found no minister there to conduct the funeral and the grave was only commenced—had just commenced to dig the grave when we got to the church.' And: 'When I arrived there, as I stated before, there was no arrangements for any funeral—no minister was there and the grave was not finished. We had to wait there at the church until they dug the grave to bury my baby.' It being respectfully submitted that the sole object of the said testimony and question was to show to the jury the mental anguish suffered by the plaintiff, and that as the cause of action herein arose prior to when the Mental Anguish Act of 1901 became a law, such question and testimony were irrelevant and harmful to the defendant, and should not have been admitted." In the first place, the testimony was responsive to the allegations of the com-

plaint, and was, therefore, admissible. In the case of *Hicks* v. *Southern Ry. Co.,* 63 S. C., at page 570, 41 S. E. R., 753, the Court says: "The object of the pleadings is to frame issues so that the parties to the action may know how to shape their testimony. The testimony mentioned in this assignment of error was responsive to an allegation, which the defendant had allowed to remain in the complaint by its nonaction. It, therefore, had no right to object to such testimony." This principle is also announced in the case of *Wallingford* v. *Western Union Tel. Co.,* 60 S. C., 201, 38 S. E. R., 629; *Ragsdale* v. *Ry. Co.,* 60 S. C., 381, 38 S. E. R., 609; and *Dent* v. *R. R.,* 61 S. C., 329, 39 S. E. R., 527.

In the second place, the testimony was competent for the purpose of showing the damages which defendant should pay by reason of the misconduct of its servants as a punishment for their wilful or wanton default. *Gillman* v. *Ry. Co.,* 53 S. C., 214-5, 31 S. E. R., 224. In the case last mentioned, Mr. Chief Justice McIver uses this language: "The third ground complains of error in allowing the plaintiff to testify as to what he did after he got back to Richmond. This, it seems to us, was harmless error, if error at all. At most, its only effect will be to aggravate *not* the damages which plaintiff sustained, but the damages which defendant should pay by reason of the misconduct of its servants, as a punishment for their wilful or wanton default; and in that view it would be competent."

Furthermore, the testimony had a causal connection between the alleged wrongful act and the injury resulting therefrom. It was, therefore, competent. In the case of *Pickens* v. *R. R. Co.,* 54 S. C., 498, 32 S. E. R., 567, the Court says: "The complaint alleged intentional wrong, and the plaintiff had the right to introduce testimony having only a remote causal connection between the alleged wrongful act and the injury resulting therefrom, in order that the jury might have all the facts and circumstances before them in estimating the examplary damages."

In the third place, the testimony was not introduced for

the purpose of showing mental anguish, and his Honor, when requested by the defendant's attorneys, explicitly charged the jury that this suit was not governed by the act of 1901 relating to mental anguish.

The third exception is as follows: "3d. Because his Honor erred in permitting, against the objection of the defendant, the plaintiff to testify in response to the following question: 'When you got off at Fletcher, you have already stated you walked through the country two miles—tell us something about the actual bodily discomfort you suffered.' The answer being: 'I was very tired from traveling on the train that distance and worried more or less with the sickness of my child and the death of it.' And also: 'As I stated before, I had to go out and pull through the mud two miles. It was very difficult even with a horse to get along at that time on account of the condition of the road.' It being respectfully submitted that the physical discomfort and annoyance which one might sustain by reason of a long walk over a bad road, is not a ground for damages; and, therefore, said question and testimony were irrelevant, and harmful to the defendant. And it being further respectfully submitted that said questions and answers should not have been admitted, for the reason that said damages, consisting of bodily discomfort, are not the actual, proximate or direct damages resulting from the failure to deliver the telegram in question, and, therefore, should not have been admitted." What was said in considering the first and second exceptions is applicable to this exception.

The appellant's attorneys rely upon the case of *Martin* v. *R. R. Co.,* 32 S. C., 592, 10 S. E. R., 960, to sustain the proposition that physical discomfort and annoyance sustained by reason of a long walk over a bad road is not a ground for damages. In that case the record shows that "plaintiffs went to a railroad station to take a regular train, which being late did not stop, although waved to. They took a freight train on the same night, this train being cold and uncomfortable, and they brought their actions

for damages, alleging that they were chilled with cold and exhausted from fatigue and mental distress and injury to their constitutions." The Circuit Judge granted a nonsuit, which was sustained by the Supreme Court. It does not, however, appear that the actions were brought for punitive damages, based on wilfulness, wantonness or recklessness. Its principles, even if sound, are, therefore, inapplicable to the question under consideration.

The fourth exception is as follows: "4th. Because his Honor erred in not granting the nonsuit on the grounds that in order that the plaintiff should recover any damages, it was essential that he produce evidence of wanton, wilful, intentional misconduct, or the equivalent thereof, on the part of the defendant, or its agents; and that there is no evidence of any character from which it could be justly inferred that the conduct of the defendant was wilful wanton or intentional, or of such a character as would warrant a verdict for punitive damages." By reference to the complaint it will be seen that the action is brought both for intentional wrong and for negligence. So that even if there was no evidence from which it could be inferred that the conduct of the defendant was wilful, wanton or intentional, it does not follow that a nonsuit should have been granted. As said by this Court in the recent case of *Griffin* v. *Ry. Co.,* "A nonsuit is an entirety—it cannot, therefore be granted unless there is a failure of testimony to sustain all the acts of wrong set out in the cause of action, as its effect would be to deprive the plaintiff of the right to recover damages for those acts of wrong, which the testimony showed were the cause of the injury."

Again, there was testimony to the effect that the defendant failed to deliver the telegram promptly and although it was a prepaid message, showing on its face the necessity for prompt delivery, it remained in the defendant's possession for more than fourteen hours. There was also testimony tending to show that no effort was made to deliver the message within said time. Under

these circumstances, it was properly left to the jury to determine whether there was reckless disregard of the plaintiff's rights. *Glover* v. *R. R. Co.,* 57 S. C., 228, 35 S. E. R., 510; *Brasington* v. *R. R. Co.,* 62 S. C., 325; *Griffin* v. *R. R. Co., supra.*

The fifth exception is as follows.: "5. Because his Honor erred in charging the jury as follows: 'The jury are instructed that damages may be of two kinds: first, compensatory; and second, examplary. Compensatory damages are awarded to compensate for, or repair a loss actually sustained, by giving, as nearly as practicable, an equivalent therefor in money.' Again, in charging: 'It is the duty of the telegraph company as a common carrier of intelligence to use what kind of care, what kind of diligence, in carrying out its object—it must be reasonable care and diligence to deliver these messages. ˙ Now, reasonable care is such care as the telegraph company or a person engaged in like business would be expected to use in conducting its business—such reasonable care and diligence as a well organized company or individuals of like nature exercise in the conduct of such business—reasonable care and diligence.' And again in charging: 'Examplary damages cannot be recovered when the defendant's default is the result of ordinary negligence merely; and in such case, if no actual damages capable of pecuniary estimation, have been sustained, but legal right of the plaintiff has been thereby violated, the jury can allow only nominal damages—as one dollar, one cent or other inconsiderable amount—to vindicate plaintiff's legal right. But when the defendant's default is the result of ordinary negligence, but of negligence so gross as to amount to recklessness and wantonness, or of such utter want of care as would raise the presumption of conscious indifference to consequences, an award of punitive damages would be proper. This is correct, I charge you. As that request properly sets out, if the defendant company's failure to deliver the telegram or to discharge the duty as set out in the complaint was the result of ordinary care, then the

plaintiff could not recover examplary damages; to recover examplary damages, plaintiff must show wanton, wilful or reckless conduct, as stated in the request, which I have just read to you.' It being respectfully submitted that from the said charges the jury might infer that if they found the defendant guilty of negligence or gross negligence, they could award a verdict against it; whereas his Honor should have impressed upon the jury that unless they found that the defendant or its agents were guilty of wanton, wilful or intentional misconduct, or of conduct the equivalent thereof, they should not find a verdict against the defendant in any sum."

As we have said, the allegations of the complaint are appropriate to an action for negligence as well as intentional wrong, both of which acts of wrong may be combined in one cause of action since the act of 1898, 22 St., 693, entitled "An act to regulate the practice in the Courts of this State in actions *ex delicto* for damages." The charge was responsive to the allegations, and was, therefore, proper.

The sixth exception is as follows: "6th. Because his Honor erred in charging the jury as follows: 'If you find that there was a printed stipulation indorsed on the sending blank used by the defendant and that the plaintiff agreed to these indorsements, or, in other words, that if the plaintiff making the contract with the telegraph company accepted and entered into the agreement with the company, that unless he filed his proof of claim within sixty days after the message is filed for transmission, that the defendant would not be liable for damages; if he agreed to that, the plaintiff is bound by that, because it is the contract. If the plaintiff did not enter into that contract with him, as a question of fact, then this request does not apply, because I so hold and so charge you, that if a contract to that effect be made, it was a contract which the parties had the right to make, and if they made the contract, then it was right and proper that they should stand to it. Now, whether such contract was made or not, is a question of fact entirely for you

gentlemen to pass upon. That second request to charge is modified, as explained to you by what I have just said, unless the plaintiff agreed to it and entered into a contract to that effect, as requested here, then he is not bound by it; but if he did, then he is bound by it. As so explained, that second request I charge you is correct.' It being respectfully submitted that by this charge his Honor implied that the plaintiff was not bound by the said stipulation by the act of sending the message on a blank of the company of which a specimen was in evidence, and unless he agreed to be so bound by a separate and special contract; whereas his Honor should have charged that if the plaintiff wrote a message on either of the forms which were in evidence and before his Honor, he thus became bound by the conditions indorsed thereon." We do not regard the question whether the stipulation in the blank that "the company will not be liable for damages or statutory penalties in any case, when the claim is not presented in writing, within sixty days after the message is filed with the company for transmission," properly before this Court for consideration, as his Honor charged that it was binding upon the plaintiff if he entered into a contract containing such stipulation.

The record contains the blank forms—one used by the defendant, the other by the Postal Telegraph Co. So much of the form in use by the defendant as is material in the consideration of the question raised by the exception is as follows:

"The Western Union Telegraph Company."

"Send the following message subject to the terms on the back hereof, which are hereby agreed to." * * *

"Read the notice of agreement on back."

Indorsed on this form is the following:

"All messages taken by this company are subject to the following terms."

Then follow several stipulations, including the one hereinbefore mentioned.

On the other form appears the following:

"Postal Telegraph Cable Company."

"This company transmits and delivers messages subject to the terms and conditions printed on the back of this blank."

"Send the following message without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to."

"Read the notice and agreement on the back."

Indorsed on this form is the following:

"This company transmits and delivers the within message subject to the following terms and conditions."

Then follow several stipulations, including the one hereinbefore mentioned.

In 25 Enc. of Law, 804-5, 1st ed., the rule is thus stated: "Ordinarily, a party is not bound by any rule or regulation, by which a carrier seeks to limit his liability, unless the same has been brought to his notice. But in the case of telegraph companies, where the message blanks are so arranged, that a party in affixing his signature to the message signs a printed contract, it is conclusivly presumed, that he thereby assents to the terms of such contract and is bound by them, although he may not have read or noticed them, or even been able to read them. In the absence of fraud or imposition, a party to a contract which has been voluntarily signed and executed by him, with full opportunity for information as to the contents, cannot avoid it on the ground of his own negligence or omission to read it." The cases of *Bethea* v. *R. R. Co.,* 26 S. C., 96, 1 S. E. R., 326, and *Daniels* v. *R. R. Co.,* 62 S. C., 1, sustain this principle. If, therefore, the plaintiff wrote the message on a blank of the defendant, containing the stipulation aforesaid, it was binding on him. If he wrote the message on a blank of the Postal Telegraph Co. and delivered it to the defendant to be forwarded, it must be conclusively presumed that he did not intend to enter into a contract with the Postal Telegraph Co., but with the defendant. If he did not intend to enter into a contract with the Postal Telegraph Co., its name may be regarded as struck out of the blank. When he delivered to the defendant a

written message on a form in which he directed it to send the message *subject to the terms and conditions printed on the back thereof and which he, in express terms, agreed to,* he was as much bound by the stipulations therein, when the message was accepted by the defendant, as if he had used one of its blanks.    These views are supported by the case of *West. U. Tel. Co.* v. *Waxelbaum,* 56 L. R. A. (Ga.), 741, in which the Court says: "It is hardly necessary to argue the very evident legal proposition that where, as in the present case, the sendee of a telegraphic message sued the telegraphic company for a breach of contract, entered into between the company and the sender of the message, he is bound by all the reasonable conditions embodied in that contract.   See *Stamy* v. *Tel. Co.,* 92 Ga., 613, 18 S. E., 1008, 44 Am. St. Rep., 95.    And it can make no difference, as was contended by counsel for the defendants in error, that the original message was written on a blank of a different company from the one which received and transmitted the telegram.    It is true, that the printed contract on the back of the blank was in the name of the Postal Telegraph Cable Co., and recited that that company was to transmit and deliver the message, subject to the terms and conditions therein set out; but Kenard & Co. took the message to the Western Union Telegraph Co. and explicitly directed it to 'send the following message without repeating, subject to the terms and conditions printed on the back thereof, which are hereby agreed to.' The Western Union Telegraph Co. accepted and undertook to transmit the message on those terms.    The parties then adopted the Postal Telegraph Cable Co.'s form of contract, and it necessarily follows that they, together with the sendee, are bound by its reasonable terms and conditions."    The charge of his Honor, the presiding Judge, was not in harmony with these principles, and this exception is sustained.

This practically disposes of all the remaining exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.