MITCHINER v. WESTERN UNION TELEGRAPH CO.

1. TELEGRAPH COMPANY—MENTAL ANGUISH—EVIDENCE.—Under a complaint for damages for mental anguish for failure to promptly deliver the telegram—"Do not come to-morrow. Small-pox at Lumpkin. Will write"—evidence tending to show that baby of addressee was fed on artificial food and that the supply with wife and baby was only enough for one day, is not admissible to show mental anguish of addressee, because there was nothing on face of the message or alleged in the complaint to give defendant notice that connected the baby with the message, but it is admissible as affording some explanation why addressee permitted his wife to stop at Lumpkin for such length of time as needs of child might require.

2. SPECIAL CONTRACT TO DELIVER MESSAGE.—Statement by transmitting agent to sender on request to get message through in a certain time, that he would "do all he could to get it through," is not evidence of a special contract to deliver a message at a specified time, but the promise implies nothing more than the ordinary contract of a telegraph company to transmit and deliver a message with all reasonable diligence.

3. WILFUL FAILURE TO TRANSMIT MESSAGE.—Evidence tending to show that a message was filed at Richland, Ga., between 6.30 and 7.00 P. M. (Central time), to be delivered at Abbeville, S. C.; that it had to pass through two relay stations; that Abbeville office closed at 8.30 P. M. (Eastern time); that it was delivered next day at 10.20 A. M., will not support cause of action for wilfulness.

4. NEGLIGENCE IN TRANSMITTING MESSAGE.—This Court cannot say that there was not a *scintilla* of evidence of negligence, where a message was filed at Richland, Ga., for Abbeville, S. C., between 6.30 and 7.00, and not transmitted until 7.40 from Richland, there being no evidence that operator was busy with prior messages, or could not get relay station except for first five minutes after filing, or that relay stations were so occupied as not to receive and immediately transmit the message.

5. TELEGRAPH COMPANY—MENTAL ANGUISH.—Evidence tending to show that plaintiff's wife remained in Lumpkin for several weeks when there were several cases of small-pox; that two towns had quarantined Lumpkin; that residents of the town could go out and in at any time on the railroad on which plaintiff's wife went in, does not show that mental anguish which the husband suffered because his wife remained in town for *several weeks* subject to small-pox, was the proximate result of failure to deliver a message advising her not to come. But the complaint is broad enough to sustain a cause of action

for negligence in failing to deliver the message in time, and as a natural result the wife was exposed to small-pox from the time of her arrival until he could with reasonable diligence have removed her from the danger.

Before MEMMINGER, J., Abbeville, October Term, 1905. Reversed.

Action by D. R. Mitchiner against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley* and *Frank B. Gary,* for appellant, cite: *There was no evidence of wilfulness:* 70 S. C., 528; 71 S. C., 303; 29 S. C., 202; 6 S. C., 185; 16 S. C., 153; 72 S. C., 256. *Operator cannot make a special contract binding on company:* 70 S. C., 16, 528; 71 S. C., 303. *Company had no notice that baby was nourished artificially:* 70 S. C., 539; Smith *v.* Tel. Co.

*Mr. Wm. N. Graydon,* contra, cites: *Evidence as to feeding baby on artificial food competent:* 60 S. C., 9; 44 L. R. A., 285. *Delay in transmitting is evidence of negligence:* 40 S. C., 194; 68 S. C., 55; 69 S. C., 545; 43 L. R. A., 214; 65 S. C., 444. *For what punitive damages are awarded:* 13 Cyc., 106; 51 S. C., 344; 52 S. C., 344; 35 S. C., 493; 34 S. C., 311.

September 17, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is the second appeal in this case, the former appeal being reported in 70 S. C., 522. The plaintiff seeks to recover damages for mental anguish alleged to have resulted from defendant's negligence and wilfulness in failing to promptly deliver a message filed on April 2d, 1903, for S. E. Bell, with defendant's agent at Richland, Ga., for transmission to plaintiff at Abbeville, S. C., in these words: "Do not come to-morrow. Small-pox at Lumpkin. Will write." Plaintiff's wife with baby was about to visit

Lumpkin, Ga., expected to take the 3.15 A. M. train, April 3d, and the object of the message was to prevent her leaving Abbeville on that train. The complaint alleges a special contract by which the defendant agreed to deliver the message at Abbeville, S. C., on the night of April 2d, in time to prevent Mrs. Mitchiner from leaving Abbeville. The complaint further alleges that owing to the failure to promptly deliver said telegram, "plaintiff's wife and baby went to Lumpkin, Ga., were quarantined on account of small-pox, were kept there four or five weeks, were constantly exposed to the danger of small-pox, and plaintiff was subjected to great mental anguish and distress on account of the danger of his wife and baby." The jury rendered a verdict for $547.50 in favor of plaintiff.

The first exception alleges error in permitting plaintiff to testify as to mental suffering arising from the fact that his baby, which accompanied his wife to Lumpkin, was fed on artificial food and that the supply of prepared milk which she took with her was only sufficient to last until 4 o'clock P. M., April 3d. The objection urged against the admission of the testimony was that it was not relevant to the allegations of the complaint. We think the testimony was improperly admitted for the purpose for which it was introduced, to show plaintiff's mental anguish. The allegations of the complaint will not warrant a recovery for mental suffering on account of the situation of the baby. Such mental suffering was not reasonably within the contemplation of the defendant company, for there was nothing on the face of the message or in the information alleged to have been given the defendant to connect the baby with the message. *Jones* v. *Tel. Co.,* 70 S. C., 540, 50 S. E., 198. The complaint alleged merely that the defendant was informed that the object of the message was to prevent *Mrs. Mitchiner* leaving Abbeville that night, and the testimony was only to that effect. There is a view, however, under which the testimony was not wholly irrelevant. The defendant had interrogated plaintiff as to whether he made any effort to prevent

Mrs. Mitchiner from stopping at Lumpkin, and it may be that the testimony as to the necessities of the baby would afford some explanation why the plaintiff allowed his wife to stop at Lumpkin, at least for such length of time as the needs of the child would require. We would, therefore, not hold the ruling to be reversible error.

The defendant requested the Court to charge the jury that there was no evidence of the special contract alleged, and the fifth and seventh exceptions assign error in refusing to so charge, and in submitting it to the jury to determine whether any such contract had been made. This, we think, was error. The only testimony relied on to support said special contract was that the telegraph operator at Richland, Ga., when advised that the sender wanted the message to be delivered at Abbeville before Mrs. Mitchiner left, promised "to do all he could to get it through." We are now called upon to decide whether a mere telegraph operator has power to bind the telegraph company by a special contract to deliver a message at a specified time. It is sufficient in this case to say that there was no evidence of any such agreement, as a promise by the transmitting agent to do all he could to get the message through cannot be construed as a guarantee that the message would be delivered in time. The promise imported nothing more than is involved in the ordinary contract of a telegraph company on receiving a message for transmission and delivery, which is to transmit and deliver with all reasonable diligence. Under such ordinary contract a telegraph company is not an insurer and is only liable for negligence or wilful default in the transmission and delivery of messages. The defendant was very probably prejudiced by submitting this question to the jury. The jury, under the charge, may have found that there was such a special contract and held the defendant liable for failure to deliver in time, although believing that the message was not filed at Richland until after the close of the Abbeville office, for the Court instructed the jury not to consider whether the office hours were reasonable or not, in case they

found there was an express contract to deliver before plaintiff's wife left Abbeville.

Under the second, sixth and ninth exceptions, the question is presented whether there was any evidence of wilfulness on the part of the defendant in failing to deliver the message promptly. This question was raised on Circuit by motion to nonsuit the cause of action based upon wilfulness, by request to charge that there was no evidence of wilfulness, and by motion for new trial on that ground. There is a conflict in the testimony as to the exact time when the mesage was filed with the Richland agent. The testimony for plaintiff was that the message was filed between 6.30 and 7 o'clock P. M., while the testimony of defendant's agent at Richland was that it was filed at 7.35, and that he noted the time on the telegram when filed, and such is the time indorsed on the original telegram introduced in evidence. Between Richland, Ga., and Abbeville, S. C., are two relay stations, one Americus, Ga., the other Atlanta, Ga. The message was transmitted to Americus, Ga., at 7.40 P. M., but did not reach the Abbeville office until 9.30 A. M., April 3d, and was delivered to plaintiff at 10.20 A. M., as testified by plaintiff, or at 9.35 A. M., as testified to by defendant's agent at Abbeville. The standard of time prevailing at Richland, Ga., was one hour earlier than the standard prevailing at Abbeville, S. C., and the closing hour of the Abbeville office was 8.30 P. M.; so that if the message was filed at Richland before 7.00 P. M., there was something over thirty minutes in which to transmit to the Abbeville office; whereas, if the message was filed at 7.35, it was even then too late for transmission to the Abbeville office that evening. There was testimony to the effect that in view of the usual business, one hour would be a reasonable time in which to get a message from Richland, Ga., to Abbeville, S. C., through the relay stations of Americus and Atlanta; but that if the wires were open and operator ready to receive the message, it could be transmitted in a few minutes. When the message reached Americus at 7.40, it was then too

late to transmit to the Abbeville office before its close at 8.30 P. M., which, according to the testimony, was a reasonable closing hour, and when the Abbeville office made the "good night" call to Atlanta office, it received no information that there was a message for Abbeville. When the message was received at the Abbeville office at 9.30 next morning, information of it was phoned to plaintiff and the message delivered some minutes later.

It was held in *Young* v. *Tel. Co.*, 65 S. C., 93, 43 S. E., 448; *Machen* v. *Tel. Co.*, 72 S. C., 256, and *Willis* v. *Tel. Co.*, 73 S. C., 379, that long delay and absence of effort to deliver promptly are some evidence to go to the jury on the question of wilfulness. The present case, however, shows some effort to deliver, and in view of the time necessarily required to transmit a message between the places named through two relays and the right to observe reasonable office hours, there was no long unexplained delay. We think, therefore, that defendant's contention that there was no evidence of wilfulness should have been sustained.

The third exception assigns error in refusing the motion for nonsuit of the cause of action based upon negligence, on the ground that there was no evidence of negligence. We cannot say there was not a scintilla of evidence of negligence. If the message was not received at the Richland office until 7.35, as claimed by defendant, then, as shown on the former appeal, there was no evidence of actionable negligence, as it was then clearly too late to transmit to Abbeville that night before its reasonable closing hour. But if the message was filed between 6.30 and 7.00 o'clock, as testified by plaintiff's witness, and it was not transmitted until 7.40, it was for the jury to say whether due diligence was exercised under the circumstances. There was no evidence that the Richland operator during that time was busy with prior messages or could not get the Americus office, except as to five minutes of time after the receipt of the message. As there was no evidence that the relay stations at Americus and Atlanta were so occupied on that par-

ticular occasion as not to be able immediately to receive and transmit the message, it may be that the defendant failed to exercise the diligence due under the circumstances, if the message was filed before 7.00 P. M. Hence, there was no error in refusing the nonsuit on that ground.

Under the eighth exception, appellant contends that the Circuit Court erred in refusing a new trial because there was a total failure of evidence to show that plaintiff's wife and child were quarantined in Lumpkin, and thereby exposed to the small-pox, as alleged in the complaint. While there was some evidence that the towns of Richland and Preston quarantined against Lumpkin on account of small-pox in April, 1903, the evidence was undisputed that Mrs. Mitchiner was free to leave Lumpkin by other routes than through Richland, and that all residents of Lumpkin were free to pass through Richland on the Seaboard Air Line to Americus, through which place plaintiff's wife traveled both in going to and returning from Lumpkin. There was, therefore, a complete failure of proof, in so far as plaintiff's cause of action depended upon the alleged quarantine. The evidence showed that plaintiff made no effort to recall his wife after learning of the existence of small-pox at Lumpkin, and that Mrs. Mitchiner made no effort to leave. Hence, any mental anxiety which plaintiff may have suffered because his wife remained *for several weeks* in Lumpkin was not the natural and proximate result of the failure to deliver the telegram, but was the result of his and her choice to remain there after knowledge of the conditions. It appears that there was small-pox in Abbeville at the same time, and this may have had an influence in the decision to remain. There was no evidence that plaintiff's wife was exposed to small-pox at Lumpkin, except the fact that it existed in the town, and there was a case about seventy-five yards from where she resided with her brother.

But the plaintiff's cause of action is not wholly dependent upon the existence of the quarantine. If the defendent was negligent in failing to deliver the message in time, and if as

a natural result of that failure the plaintiff's wife (not wife and child) was exposed to the danger of small-pox for any length of time, and if plaintiff, judged by the standard applied to men of average firmness, intelligence and sensibility, suffered mental anguish because of such exposure, the complaint is broad enough to sustain a recovery for such damages as the jury may conclude are just compensation therefor. The greatest length of time for which plaintiff could possibly have suffered mental anguish as the result of the failure to deliver the message (if the jury should conclude there was a negligent failure to deliver promptly), is from the time of the receipt of the message to the time when with reasonable diligence he could have kept or removed her from such danger, since the law requires one affected by the negligence of another to use ordinary care to avert or minimize the harmful consequences. *Willis* v. *Tel. Co.*, 69 S. C., 539, 48 S. E., 538. As the Circuit Court may have refused the new trial because the plaintiff's cause of action was not wholly dependent upon the existence of the alleged quarantine, we cannot say that there was error of law; but as there must be a new trial upon other grounds already stated, the remarks we have made in this connection may be useful in reaching a just conclusion in this protracted litigation.

The remaining exceptions, not practically covered by what has been said, relate to the charge to the jury as to punitive damages, but they were not argued by appellant, and we do not deem it important to consider them.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.