7417

BAKER v. WESTERN UNION TEL. CO.

2. TELEGRAPH COMPANIES—EVIDENCE.—In explaining delay in delivering a telegram it is not competent to show the conditions of a wire over which it is not shown the message should have passed.

2. EVIDENCE.—It is competent here for plaintiff to testify that previous protests of his notes had not injured his credit.

3. IBID.—SPECIAL DAMAGES.—Statement that since the protest of his note, the merchant had lost business and could not buy bargains because he had no credit, is only stating that which every merchant strives to do.

4. TELEGRAPH COMPANIES.—NOTICE that failure to deliver the telegram would probably be the dishonor of sender's note and injury to his credit was conveyed to carrier here both by special notice and the words of the message.

5. IBID.—EVIDENCE.—Under allegation that telegram was not delivered until "after banking hours and too late for the plaintiff's son and agent to have paid said note," it may be shown that on account of failure to deliver the message plaintiff's agent used the funds in hand to pay another note and was thus unable to prevent protest of the note referred to in the message.

6. IBID.—A telegraph company is responsible for the injury resulting to a merchant from his note being protested when he had funds to pay it with, which would have been so used, except for negligence in carrier in failing to deliver promptly a message.

7. IBID.—WILFULNESS.—Delay of four or five hours in delivering a message without proof of a direct line between initial and terminal offices or other supporting circumstances is not evidence of wilful disregard of duty.

8. NONSUIT—VERDICT.—Exception urging that on account of contradictions in the evidence of plaintiff and of entire failure of proof of damage to plaintiff, the trial Court should have granted a new trial, will not be considered here in absence of motion for nonsuit or request to direct a verdict.

9. REHEARING refused.

Before PRINCE, J., Charleston, October term, 1908.   Reversed.

Action by H. Baker against Western Union Telegraph Co.   From judgment for plaintiff, defendant appeals.

*Messrs. Mitchell & Smith,* for appellant, cite: *Evidence as to condition of wires improperly ruled out:* 19 S. C., 71; 72 S. C., 350; 80 S. C., 207. *Carrier not responsible for delay caused by act of God:* 19 S. C., 71; 80 S. C., 207; 72 S. C., 350. *No evidence of wilfulness:* 73 S. C., 520; 69 S. C., 545; 77 S. C., 405, 404; 65 S. C., 99; 72 S. C., 256; 73 S. C., 385. *Injury to credit too remote:* Jones on Tel. Cos., secs. 538, 567; 107 Fed., 668; 76 S. C., 348.

*Messrs. Nathans & Sinkler,* contra, cite: *Prevention of performance by act of God must be pleaded:* 6 Abb. Pn. R., 132. *Issue of wilfulness properly sent to jury:* 73 S. C., 385; 65 S. C., 93, 516.

The opinions herein were filed November 25, 1909, but held up on petition for rehearing until

January 8, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.· In this action the plaintiff recovered a judgment for $300 against the Western Union Telegraph Company under the allegation that he had been "injured in his good reputation and standing and credit as a merchant," by the delay in the delivery of a telegram.   According to the evidence on behalf of the plaintiff, this was the case before the Court:   The plaintiff Baker, a small merchant, had stores at Elloree and Georgetown.   Having a note of $100 due in the Bank of Charleston on 11th September, 1906, he delivered to defendant's agent at Elloree between nine and ten o'clock on 10th September, 1906, this dispatch, addressed to Jacob Baker, his son and agent in Georgetown, "Pay note Bank of Charleston today."   He specially requested prompt delivery, informing the agent that he had a note due in Charleston and that the message was important, and was told by the agent that it would be delivered in about fifty minutes.   The message was not delivered until about four o'clock in the afternoon of the same day, after the banks in Georgetown had closed for the day.   Jacob Baker had funds in the bank to the credit of the plaintiff, sufficient to pay the note referred to in the telegram, and would have so applied them if the telegram had been promptly delivered. According to one version given by Jacob Baker, he had applied the funds to the payment of another note at about 2:30 o'clock just before the close of  banking hours, and, therefore, could not pay the note in Charleston after the receipt of the telegram.   Jacob Baker also testified he had the funds to the credit of his father to pay the note to the Bank of Charleston when the telegram was received, but because it was after banking hours he could not make the remittance in time to prevent protest.   The note in the Bank of Charleston was protested, and, according to the plaintiff's evidence, his credit, especially in that bank, was greatly injured.

31—84

The defendant offered evidence tending to show that the plaintiff was in bad credit with merchants and banks, and that it was not his habit to pay notes at maturity; and that Jacob Baker could have prevented the protest by having the Georgetown bank to telegraph payment to the Bank of Charleston on the 11th of September. Defendant's agent at Georgetown testified that he received the message at 1:56 o'clock in the afternoon of the 10th of September, and sent it out at 2:50 o'clock, the delay being due to the absence of the messenger boys from the office on other business. No other explanation of delay appears in the evidence.

The first exception relates to the subject of explanation of the delay, alleging error in the refusal of the Circuit Judge "to allow defendant's witness, P. E. Ryan, to testify as to the conditions of the telegraph wires of the defendant company between Charleston and Georgetown over which the message had to be sent, and to explain the alleged delay." The portion of the record relied on to sustain the exception is as follows: "Q. Where do you live? A. Charleston. Q. What was your occupation on September, 10, 1906? A. I was acting chief operator that day. Q. For who? A. For the Western Union Telegraph Company. Q. Mr. Ryan, on that day, September 10, 1906, will you state what was the trouble, if there was any trouble, with the wires from Charleston to Georgetown? Objected to. Objection sustained. Exception noted."

It was certainly competent for the defendant to explain the delay, by showing that any trouble with its wires between Elloree and Georgetown was not due to its negligence. But there is nothing whatever in the record to show that it was necessary for the message to go by way of Charleston, and until the defendant had offered some evidence that the message would pass over the wire connecting Georgetown and Charleston, there could be no complaint of the exclusion of this testimony as irrelevant. As there was no evidence of any derangement of the wires between Elloree and

Georgetown there was no basis for the request to charge on that subject.

. The objection to testimony of Baker in explanation of the protests of the other notes cannot be sustained; for it was certainly competent for him to testify to circumstances, indicating that his credit was not injured by the other protests. No objection to the statement of the plaintiff that he had a wife and children appears in the record. The ground of objection to his testimony that since the bank had refused him credit he had lost a lot of business and could not buy bargains, because he could get no credit, was not indicated to the Court when the objection was made. But aside from that, it was nothing more that a statement that he could not do that which every merchant strives to do.

The words of the telegram, and the evidence of the plaintiff that he gave special notice of the importance of prompt delivery were sufficient to put the defendant on notice that the probable consequences of failure to deliver would be dishonor of the plaintiff's note and injury to his credit.

The evidence that by reason of the failure to get the telegram promptly, plaintiff's agent, Jacob Baker, used the fund in bank to pay another debt, just before the bank closed, and so was unable to prevent the protest of the note in the Bank of Charleston, was not fatally variant from the allegation of the complaint that the telegram was not delivered until "after banking hours and too late for the plaintiff's son and agent to have paid said notes."

The cause of action stated in the complaint was the defendant's breach of duty in failing to deliver the telegram promptly, and injury to the plaintiff, which arose from the delay in that his note was protested and his credit impaired. The circumstances which made it impossible to meet the note after the telegrams was received were mere details. It was not error, therefore, for

the Court to charge the jury that: "If he had plenty of time and the means, and was not without means because of the failure of duty on the part of the defendant company, but had used those means for other purposes which he would not have used but for the negligence of the defendant company, and then injury resulted to him by reason of the protesting of the note, which would not have been protested had the telegram been delivered within a reasonable time, then the defendant would be responsible." It is true that the statements of Jacob Baker on this subject are utterly irreconcilable, but that was a matter for the jury.

There was no evidence of wantonness and wilfulness, and the Circuit Judge should have instructed the jury as requested by defendant that they could not find punitive damages. The only evidence relied on to show wilfulness or wantonness was the delay in the transmission of the telegrams. The telegram was sent, according to the complaint, at 10:30 A. M., and according to the evidence at about 9:30 A. M., and received at about 4 on the same day. There is no evidence that the line is direct between Elloree and Georgetown, on the contrary the statement of the defendant's agent to the plaintiff that it would take fifty minutes to get it through indicates plainly that it was not direct. The delay from 1:56 P. M., when it reached the Georgetown office, to the time of delivery was explained by the Georgetown agent to be due to the absence on office duty of all the messenger boys. The question is, whether an unexplained delay of four or five hours between Elloree and Georgetown is evidence of wantonness or wilfulness. The rule in this State is that delay in the transmission and delivery of a telegram is evidence of negligence on the part of the telegraph company. *Poulnot* v. *Tel. Co.,* 69 S. C., 545, 48 S. E., 622; *Hellams* v. *Tel. Co.,* 70 S. C., 83, 49 S. E., 12; *Ariail* v. *Tel. Co.,* 70 S. C., 418; 50 S. E., 6; *Eaker* · v. *Tel. Co.,* 75 S. C., 97, 55 S E., 129; *Kirby* v. *Tel. Co.,* 77 S. C., 404; 58 S. E., 10; and that long and unexplained delay

is evidence of wilfulness or wantonness.  This latter doctrine has its origin in *Young* v. *Tel. Co.,* 65 S. C., 99, 43 S. E., 448.  In that case Justice Gary, speaking for the Court, laid down the rule that evidence of the telegram remaining in the possession of the telegraph company undelivered for fourteen hours, *together with affirmative evidence that no effort had been made to deliver it,* was sufficient to go to the jury on the issue of wilfulness.  This case went no further than to hold that where the plaintiff offered evidence not only of the long delay, *but also of lack of effort to deliver,* he had made an issue of wilfulness for the jury.  The cases which followed have extended the rule in favor of the plaintiff in such cases by holding evidence of long delay in delivering the message *without an affirmative showing by the defendant* of effort to deliver, to be sufficient to carry the issue of wilfulness to the jury.  *Machen* v. *Tel. Co.,* 72 S. C., 256, 51 S. E., 697; *Willis* v. *Tel. Co.,* 73 S. C., 385, 53 S. E., 639; *Bolton* v. *Tel. Co.,* 76 S. C., 529, 57 S. E., 543; *Dempsey* v. *Tel. Co.,* 77 S. C., 404, 58 S. E., 9; *Balderston* v. *Tel. Co.,* 79 S. C., 160, 60 S. E., 435; *Fail* v. *Tel. Co.,* 80 S. C., 207, 60 S. E., 697.  In these cases the range was from a delay of seventeen hours to an entire failure to deliver, and in some of them the delay was accompanied by other circumstances tending to show wilfulness.  It is not possible to lay down any hard and fast rule as to the duration of the time of delay necessary to carry the issue of wilfulness to the jury, because of the varying circumstances of each case.  But we reject the proposition that delay of four or five hours, without proof of a direct line between the initial and terminal offices or other supporting circumstances, is evidence of wilful disregard of duty.  The law does not assume wilful violation of duty.  On the contrary, the burden is on him who alleges it to prove it.  When it is remembered that inexplicable miscarriages in business will sometimes occur, notwithstanding the utmost human care, vigilance and ingenuity, the Courts ought to be very cau-

tious in allowing the inference not only of lack of care but also of wilful violation of duty to be drawn from a particular instance of lack of promptness in transmitting and delivering a telegram or in the performance of any other duty.

Counsel for appellant earnestly contends that there were contradictions in evidence on the part of the plaintiff, and such an entire failure of proof of damage to plaintiff that the Circuit Judge should have granted the motion for a new trial. The exception on this point cannot be considered, because there was no motion for nonsuit and no request to direct a verdict as to the alleged cause of action for actual damages.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the cause remanded to that Court for a new trial on the cause of action for the alleged negligence of the defendant.

MR. JUSTICE HYDRICK, *concurring* and *dissenting*. I concur in the opinion of Mr. Justice Woods, except in his conclusion that the Circuit Judge erred in submitting the question of punitive damages to the jury, as to which I dissent. The plaintiff testified that he filed the telegram for transmission about 9 o'clock A. M., and notified the agent of its importance, and the agent told him it would be delivered in about fifty minutes. His son testified that it was not delivered until 4 o'clock P. M., The defendant's agent at Georgetown testified that it was received at 1:56 P. M., and sent out at 2:50 P. M. Besides the information given the agent at Elloree, the telegram showed on its face the importance of delivery during banking hours that day. In considering the question, the testimony must be taken most strongly against the defendant. So, we have a delay in transmission from about 9 o'clock in the morning until 1:56—nearly five hours—and not a word of explanation. It was not shown that the information given the agent at Elloree, as to the importance of

prompt delivery, was transmitted to the agent at George-town, nor does it appear whether any service message was sent to ascertain if the message was delivered, although the agent at Elloree had promised plaintiff that it would be delivered to his son in fifty minutes. In Bolton's case, 76 S. C., 538, the Court said: "The agent of the defendant, who received the message at Lithonia, ought to have been informed by the transmitting office of the undertaking to put the message through that night, and if the Lithonia night operator, under the circumstances in which he was situated, could not with reasonable diligence have arranged for the delivery of the message, he should have informed the trans-mitting office so that plaintiff might have been informed in order that she could make the necessary arrangements to meet the difficulty arising from a failure to deliver the message that night as contemplated."

At the Georgetown office we have a delay of nearly two hours, according to plaintiff's testimony, from 1:56 until 4 o'clock, in delivering so important a message to one who was not a quarter of a mile from defendant's office; and the only explanation given is that the messenger boys were all out on other business. We are not told what the usual business of the office was, whether there was an unusual rush of business that day, how many messengers were usually employed, or how many were in the service that day, or why a special messenger could not have been employed to deliver this message.

The reason of the rule that unreasonable delay in the trans-mission or delivery of a telegram raises a presumption of negligence, and casts the burden of explanation on the com-pany, is because it is a public business, requiring a high degree of technical skill and diligence, and the causes of delays, mistakes and errors are peculiarly within the knowl-edge of the company. Hence, the burden was upon the com-pany, and not upon the plaintiff, to show whether the mes-

sage had to go from Elloree to Georgetown over a direct line, or through one or more relay stations.

This Court has held, time and again, that long delay, in the absence of undisputed evidence of a real effort to transmit or deliver, will carry the case to the jury on the issue of punitive damages. We have never yet said what is the shortest time that will be held to be a long delay. That must depend upon the circumstances of each case. But we have said that the issue must be submitted to the jury, unless the testimony, both that on the part of the plaintiff and the undisputed exculpatory evidence on the part of the defendant, will not justify a reasonable inference of recklessness, which is indifference to the rights of others, or of wantonness, which is a conscious failure to observe due care.

I am constrained to think that the testimony in this case warranted a reasonable inference of indifference to the rights of the plaintiff, and of a conscious failure to observe due care.

January 8, 1910. PER CURIAM. After careful consideration of the petition herein, the Court fails to discover wherein any material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed, and that the order heretofore granted, staying the remititur, be revoked.