13963

BELCHER v. ATLANTIC COAST LINE R. CO.

(177 S. E., 890)

*Mr F. L. Willcox,* for appellant,

*Messrs. Baker & Baker,* for respondent.

December 27, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

I concur in the opinion of Mr. Justice Bonham in his disposition of the question of actual damages, but I do not agree with his holding and conclusion as to punitive damages. I think the Court below, under the testimony, could not have done otherwise than submit that issue to the jury.

Common carriers for hire owe the highest degree of care to their passengers for safe transportation from one point to another. The conductor in charge of the train, in the exercise of his duties as such, has actual notice of the destination of the passenger as indicated by his ticket, and, when he announces that station as being the point of such destination, the passenger is warranted in relying upon such announcement as being correct, unless he knows that the station is some other than the one actually called.

It appears from the record before us that the plaintiff, late in the afternoon of February 11, 1934, purchased from the defendant a ticket for transportation as a passenger over its line of road from Kingstree to Effingham, S. C., intending from the latter point to go by bus to a C. C. C. Camp; that between Kingstree and Effingham, about three miles from the latter place, is a flag station called New Hope, where trains stop to take on passengers upon being signaled by the person desiring to get aboard; that on the night in question the train on which the plaintiff was riding was flagged at New Hope by an employee of the defendant, one J. C. Fowler, and the engineer, in response thereto, gave two short blasts of the whistle, which signified that he was stopping to take on a passenger, not to put one off. The conductor testified that he did not hear this signal, although he was sitting in the rear of the coach for colored passengers. When the train came to a standstill, the conductor called the station as Effingham, and the plaintiff, relying upon such announcement as being correct, as he had a right to do, and being a stranger in that vicinity, got off the train, thinking that he had reached his point of destination; and he testified that he did not discover that he was not at Effingham until the train had left, which it immediately did. The conductor stated that he did not get down to the ground when he let the plaintiff off at New Hope, although, if he had done so, he would probably have discovered his mis-

take. The night, according to the testimony of the plaintiff, was extremely cold, rainy, and very dark. The conductor admitted that he miscalled the station, although there could possibly be no confusion in the names New Hope and Effingham, and gave as his reason for doing so that he was "preoccupied with other things and miscalculated the distance the train had run after leaving Coward." He further stated that he had gone to the rear end of the coach for colored people, and that "I was busy making up reports there when the train come to a stop at New Hope." He also said that after he discovered his mistake, about two and one-half miles from New Hope, he did not back the train in order to pick up the plaintiff. Nor did he send an automobile for him or do anything about the matter whatsoever. In fact, it appears from the evidence that he did not deem what happened of sufficient importance to even report it.

Considering the degree of care owed to passengers by a railroad company, there was ample evidence of gross carelessness, acts of commission and omission, on the part of the defendant, which in law would sustain a finding of willfulness. As stated, the issue, under the testimony, was undoubtedly one for the jury. See *Entzminger v. Railway,* 79 S. C., 151, 60 S. E., 441.

A majority of the justices being in accord as to the conclusions herein reached, it is the judgment of this Court that the judgment of the Court below be, and hereby is, affirmed in all particulars.

MR. JUSTICE CARTER and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.

MR. JUSTICE BONHAM (dissenting): The plaintiff alleges in his complaint: That on February 11, 1934, he became a passenger on defendant's train by virtue of a ticket duly purchased and paid for, which entitled him to transportation from Kingstree, S. C., to Effingham, S. C. That at a way station, New Hope, where defendant's passenger trains stop only on signal, the train on which plaintiff was

a passenger stopped, and the conductor called the station Effingham, and by his conduct invited plaintiff to alight, which he did. That after the train was gone plaintiff discovered that he was at the wrong station. That there was only an open shed for the accommodation of passengers. That the weather was extremely cold and disagreeable. That plaintiff expected to connect at Effingham with the camp bus, which would take him to the C. C. C. camp where he was employed; that he was put to expense and considerable trouble in procuring transportation to camp, and because of exposure to the inclement weather he suffered discomfort, mental anguish, and impairment of his health. He asked damages, actual and punitive, in the sum of $3,000.00.

The answer admits the formal allegations of the complaint; admits the plaintiff was a passenger on its train as alleged in Paragraph 3 of the complaint; denies that it has knowledge or information sufficient to form a belief as to the allegations of Paragraphs 4, 5 and 6 of the complaint, except so much as allege that the plaintiff on the occasion named obtained transportation from New Hope to the C. C. C. camp, near Effingham, S. C.; denies that plaintiff suffered any mental anguish or any impairment of his health in consequence of leaving the train at New Hope and finding it necessary to procure other transportation to the C. C. C. camp; and it especially denies that its conductor was willful, wanton, or reckless in giving the plaintiff the information which caused him to leave the train at New Hope, and alleges that this information was given in good faith at a time when the conductor believed that the train had reached Effingham.

The case was tried in the Civil Court of Florence County and resulted in a verdict in favor of plaintiff for the sums of $25.00 actual damages, and $325.00 punitive damages.

At the close of all the testimony the defendant moved for a verdict in its favor as to punitive damages, on the ground that there was no testimony tending to prove that the train

conductor was so negligent, so grossly negligent, willful, or reckless, as to warrant a verdict for punitive damages. The motion was overruled.

A motion for new trial was made based on the ground that there was no testimony to support a verdict for actual damages for more than $2.50 and there was no evidence to support a verdict for punitive damages in any amount. The motion was denied.

The defendant appeals on two grounds.

(1) Error in not directing a verdict for defendant as to punitive damages because there was a total lack of evidence to show that the defendant was so negligent, grossly negligent, reckless, willful, or wanton as to warrant a verdict for punitive damages.

(2) Error in not granting a new trial unless the plaintiff should remit all but $2.50 of the verdict for actual damages, and all of the verdict for punitive damages, in that there was no testimony which, when properly considered, even tended to support a verdict for more than $2.50 actual damages, and no testimony which even tended to support a verdict for punitive damages in any amount.

We will consider the last exception first.

It is uncontradicted that plaintiff and his companion also, who were bound for the camp, were compelled to hire transportation from New Hope. True, the person who conveyed them there testifies that he made no charge, but they promised to pay him $5.00. It was evident that he expected to be paid, and plaintiff testified that he felt obligated to pay him. The appellant admits its liability on this item for $2.50. If plaintiff be compelled to pay the whole amount of $5.00 promised, defendant will be liable therefor. There is evidence that plaintiff got off at the wrong station on a very dark and cold night, and stumbled around in the dark seeking shelter and some one to take him to camp; that it was very cold and disagreeable, and was misting and raining, and plaintiff suffered much discomfort; that in consequence

of this experience plaintiff suffered a cold and tonsilitis, and was confined to quarters at camp for two days. It is true that there is contradictory testimony as to the weather conditions and as to whether the tonsilitis from which he suffered was produced by exposure incident to occurrences at New Hope on the night in question. But those were questions of fact for the jury. We think there was ample evidence to sustain the verdict of $25.00 actual damages.

2. Was it error to refuse the motion for directed verdict for defendant, and motion for new trial as to punitive damages, on the ground that there was no testimony which tended to prove that the conductor of defendant's train was so negligent, grossly negligent, reckless, willful, or wanton as to warrant the finding of a verdict for punitive damages?

It does not admit of argument that, if there is no evidence upon which to predicate a verdict for punitive damages, it is the duty of the trial Judge so to declare. He cannot leave it to the jury to determine whether there is such evidence. Unquestionably if there be relevant evidence on the question he must leave it to the jury to pass upon its force and effect. But it is the primary duty of the Judge to determine if there is such evidence.

Two cases in 35 S. C. deal with this subject. In *Spellman v. Railroad Co.,* 35 S. C., 475, 14 S. E., 947, 951, 28 Am. St. Rep., 858, Mr. Justice Pope dealt elaborately with the question. Mr. Justice McIver, concurring in the opinion, makes this observation, in which Mr. Justice McGowan concurred: "It is also due to Mr. Justice Pope that attention should here be directed to the correction or modification of what seems to be an approval of the doctrine stated in the quotation from Thompson on Negligence (page 1254), made by him in the opinion filed at the present term in the case of *Samuels v. R. & D. Company,* prepared by the same justice."

The *Samuels case* is found at page 493 of 35 S. C., 14 S. E., 943, 944, 28 Am. St. Rep., 883.

It must be accepted that the doctrine as it is stated in the *Samuels case* is correct law. There it is said: "A tort that sounds in exemplary damages is where some right of person or property is invaded maliciously, violently, wantonly, or with reckless disregard of social or civil obligations."

In *Baldwin v. Cable Co.,* 78 S. C., 419, 59 S. E., 67, this is said: "The law is well settled that in declaring in tort, when the plaintiff alleges the act which caused the injury to be negligent and willful, he in reality states two causes of action—in one cause of action alleging the act to be a tort because inflicting injury by negligence, and in the other alleging the act to be a tort because inflicting injury willfully. Under a complaint so drawn, upon failure to prove willfulness, the plaintiff may be nonsuited as to that cause of action and denied punitive damages, but may recover actual damages on proof supporting the charge of negligent injury. *Machen v. Tel. Co.,* 72 S. C., 261, 51 S. E., 697."

In *Baker v. Tel. Co.,* 84 S. C., 477, 66 S. E., 182, 183, 137 Am. St. Rep., 848, it is said: "There was no evidence of wantonness and willfulness, and the Circuit Judge should have instructed the jury * * * that they could not find punitive damages. * * * The law does not assume willful violation of duty. On the contrary, the burden is on him who alleges it to prove it."

In *Payne v. Cohen,* 168 S. C., 459, 167 S. E., 665, 666, the following was quoted from *Baldwin v. Cable Co., supra:* "The plaintiff omitting to charge negligence, alleges it was done willfully, wantonly, or recklessly, he cannot recover either actual or punitive damages unless he prove willfulness, wantonness, or recklessness." Citing cases.

The opinion in the *Payne case* continues:

"When, therefore, the trial Judge charged:

" 'Then I charge you that an act is done wilfully when it is done intentionally,' he committed error prejudicial to the rights of appellant. * * * A man may do an intentional act in ignorance that he is doing a hurt or a wrong to an-

other. Or one may do an intentional act under the honest belief that he is within the law and his rights in the premises."

Mr. Chief Justice McIver said in the case of *Kibler v. Southern Ry. Co.,* 62 S. C., 252, 40 S. E., 556, 563: "One may intentionally do an act which proves to be unlawful without the slightest design to do a wrong to any one. For example, one may intentionally cut trees growing on land which proves upon investigation to be the land of another, although he honestly believed * * * that the trees were on his own land; and in such a case no one would say that the act was malicious, although the person who cuts the trees did an unlawful act intentionally."

We have carefully examined the evidence in the present case, and can find no proof of willfulness, wantonness, or recklessness on the part of the conductor of the defendant's train. The testimony for the plaintiff shows: That he was rightfully a passenger on the train as the holder of a ticket, which entitled him to transportation from Kingstree, S. C., to Effingham, S. C. That the train was stopped at New Hope, three miles from Effingham, and he was invited by the conductor to alight from the train, which he did. That the night was cold and disagreeable and he suffered discomfort and inconvenience, and was put to trouble and expense in procuring transportation to his ultimate destination, the C. C. C. camp, three miles beyond Effingham. There was no particle of testimony that the conductor treated him with rudeness or discourtesy, nor that he used any offensive language to him. It is suggested that the conductor should have backed his train when he discovered that plaintiff had been let off at the wrong station.

There is evidence that New Hope was a flag station and trains stopped there only on signal; that on the night of this occurrence the train, upon which plaintiff was, was flagged by C. L. Fowler. It stopped, he boarded it, and went to Florence on it.

Mr. Lamb, the conductor of the train in question, testified: That soon after the train left Coward, three miles south of New Hope, it was discovered that a woman passenger had disappeared from the train. He backed his train for about mile and a half and found her lying by the track, took her into the baggage car and was concerned about her condition and was busy looking after her comfort. That he stationed his porter in the end of the coach next the baggage car with instructions to keep people from going into the baggage car to see the woman. He was preoccupied and his time taken up with keeping the white passengers from going into the car where she was. He also instructed the porter to pull the signal for Effingham. When he heard the whistle for New Hope, being unaware that the station had been signaled for, he naturally thought it was the signal for Effingham. That his mind was much preoccupied, and he was much upset. That before reaching Effingham he discovered that plaintiff had been mistakenly let off at New Hope. That he did not back the train for him because he was intent on getting the lady passenger to a hospital as soon as possible. He did not know the extent of her injuries. He had been employed on the railroad thirty-five years.

There is in all this testimony no proof of any act of willfulness, wantonness, or reckless and intentional disregard or invasion of plaintiff's rights. The motion for direction of a verdict as to punitive damages should have been granted.

The judgment of the lower Court is affirmed as to the finding for actual damages and should be reversed as to the finding for punitive damages.

This opinion was written as the main opinion, but a majority of the Court do not concur, and hence this opinion becomes the dissenting opinion.