## BOLTON v. WESTERN UNION TEL. CO.

1. AGENCY MAY BE PROVED BY CIRCUMSTANCES.—Instructions given a person at a postoffice adjoining the telegraph and railroad office, where the witness had seen the person informed using the telegraph instrument, and who had sold him tickets on railroad, are admissible as tending to show agency of telegraph company by circumstances.

2. EVIDENCE IN REPLY is so largely within the discretion of the trial Judge, that its admission will seldom ever be made ground of reversal.

3. CONTRIBUTORY NEGLIGENCE.—REQUEST TO CHARGE if negligence of plaintiff and defendant are evenly balanced no recovery can be had, properly refused, because: (1) contributory negligence was not pleaded; (2) any negligence of plaintiff directly and proximately contributory to the injury will defeat a recovery.

4. TELEGRAPH COMPANIES.—Where a message is transmitted at night from a night message blank which is changed to "day message" and sending operator testifies that it means "transmit at once" and no information is given receiving office of change and no effort is made to deliver until office hours next day, telegraph company is liable for mental anguish and punitive damages, although an effort to deliver the following day after office hours, and if such delivery had been made the addressee could not have attended the funeral.

MESSRS. JUSTICE GARY AND WOODS *dissent, because there was no evidence as to punitive damages.*

Before HYDRICK, J., Richland, April Term, 1906. Affirmed.

Action by Susan Bolton and Burnell Bolton against Western Union Tel. Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons* and *Nelson & Nelson,* for appellant cite: *The evidence shows no wilfulness or wantoness on the part of the defendants:* 60 S. C., 71; 70 S. C., 42; 69 S. C., 500; 64 S. C., 9; 65 S. C., 444; 66 S. C., 452; 72 S. C., 256. *And judge should have granted a nonsuit or instructed a verdict:* 69 S. C., 453; 72 S. C., 256, 116; 73 S. C., 520; 74 S. C., 64, 491; 75 S. C., 182, 208. *Company not required to deliver message until office hours next day:* 71 S. C., 303;

34—76

386; 72 S. C., 116, 520. *If negligence is evenly balanced on both sides, plaintiff cannot recover:* 70 S. C., 525; *Kennedy v. Ry.,* 59 S. C. *Notice to one at postoffice under facts here is not binding on defendant:* 60 S. C., 67. *Delay in delivery of message did not deprive sender of comfort of having her husband at the funeral:* 71 S. C., 303, 386; 72 S. C., 116, 520. *Other offices need not be informed of office hours at one office:* 72 S. C., 116; 72 S. C., 520; 24 Fed. R., 124; 103 Ind., 505; 86 Tex., 368; 8 Tex., Civ. App., 176; 94 Ga., 444; 97 Ga., 328; 62 S. W., 136; 27 Ency., 1039; 53 S. W., 712.

*Messrs. E. McC. Clarkson* and *D. W. Robinson,* contra, cite: *Long delay in delivery may be evidence of conscious failure:* 73 S. C., 385; 65 S. C., 93; 72 S. C., 354; 75 S. C., 129; 65 S. C., 99; 73 S. C., 385. *Negligence of plaintiff:* 59 S. C., 535; 72 S. C., 172; 75 S. C., 71. *Proof of agency:* 32 S. C., 802. *Evidence in reply:* 66 S. C., 32, 546; 69 S. C., 464; 74 S. C., 7; 51 Fed., 178; 87 Fed., 855; 160 U. S., 77; 119 U. S., 152. *As to actual damages:* 69 S. C., 537, 31 S. E., 403; 72 S. C., 523. *Company may establish office hours:* 71 S. C., 391; 308; 72 S. C., 118. *But an agreement to deliver out of office hours may be shown:* 71 S. C., 311; 27 Ency., 1038; 107 Ia., 356; Thomp. on Elect., sec. 300; 72 Tex., 654; 32 S. E., 802; 70 S. C., 87; 73 S. C., 522, 55 S. E., 363.

April 12, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, Susan Bolton, joining her husband with her in the suit, recovered judgment against defendant for three hundred and seventy-five dollars as damages for alleged negligence and wilful failure to deliver a telegram filed by her at Columbia, S. C., July 28, 1905, for transmission to Burnell Bolton at Lithonia, Ga., in these words: "Come at once, mother is dead." The complaint alleged that by reason of defendant's negligent and wilful

failure to deliver the message, the plaintiff "was deprived of the presence of her husband at the funeral of her mother and his aid and consolation at that time," thereby causing her great mental suffering.

To this judgment the defendant company filed exceptions on several grounds of which we will first notice those relating to the introduction of testimony.

The Court permitted the plaintiff, Burnell Bolton, to testify over objection, that he gave instructions as to where he could be found in case a telegram came for him, to a man at the postoffice, whose name he could not give, but whom he had seen using the telegraph instrument, and who had previously sold him tickets from Lithonia, and who sold him a ticket from Lithonia on Saturday evening, July 29th. It also appears that the railroad and telegraph companies occupy the same room at the Lithonia station, and in this particular case the message, according to defendant's contention, was received by an agent of the railroad. It is contended that this afforded no evidence that the person receiving the instructions was an agent of the defendant company. It is competent to prove agency by circumstantial evidence. Whatever may be said as to the strength or conclusiveness of the circumstances, they at least tend to show that the person receiving the notice was at the time in question employed in the office where the defendant company transacted its business and was permitted by the defendant to use its instrumentalities. It is so rare and so improbable that one without authority should publicly use the telegraph line and instruments that the fact of such use makes it probable that the use was by its authority. If the use of defendant's instruments was by a mere stranger or intruder, of course no such presumption could arise, but it is not uncommon practice for railroad and telegraph companies to maintain arrangements of joint agencies at stations where the business is light. The third exception, therefore, cannot be sustained.

There was no error in admitting by way of reply the testimony as complained of in the fourth and fifth exceptions. The testimony admitted was not irrelevant and was in reply to the defendant's testimony. These matters are so largely within the control and discretion of the trial Court that it will seldom happen that his rulings thereon will be regarded ground for reversal.

The second exception complains of the refusal of the Court to charge defendant's eleventh request as follows: "If the plaintiff's negligence or the negligence of the addressee was the proximate cause of the injury, the plaintiff cannot recover, even though such negligence was not the sole cause of the injury. It is not necessary to prove such negligence on the part of the sender or his or her addressee by the preponderance of the evidence, but it is sufficient if it evenly balances the proof of defendant's negligence. In other words, if the negligence of the company, if there was any, is evenly balanced by the negligence of the plaintiff or the addressee of her message, if there was any, your verdict should be for the defendant."

This request is supposed by defendant's counsel to be in conformity with the rule stated in *Mitchner* v. *Tel. Co.*, 70 S. C., 525, 50 S. E., 190; but that case merely decides that under a general denial defendant may show that the injury was caused *solely* by the negligence of the plaintiff, and that it was error to instruct the jury that such a negative defence must be established by the preponderance of the evidence. The request to charge in this case, as shown by the last sentence in connection with the last clause of the first sentence, involved an instruction with reference to the affirmative defense of contributory negligence, and was properly refused as no such defense had been pleaded; and if it had been pleaded, the request was erroneous in stating the rule as to contributory negligence, since *any* negligence of the plaintiff directly and proximately contributing to the injury will defeat a recovery.

The first exception assigns error in submitting the question of punitive damages to the jury, notwithstanding defendant's request to charge that punitive damages could not be awarded, there being no testimony that the conduct of defendant in failing to deliver the message was wanton or wilful. This same question is presented under subdivisions one and two of the sixth exception, charging error in refusing the motion for a new trial. The message was delivered for transmission to defendant's agent at Columbia, S. C., at about 10 o'clock P. M., July 28, 1905. It was written on a blank for a night message, but defendant's agent changed it to a day messsage and received pay for it as such under request of the sender that it be sent immediately. The address of the sender was given and placed on the telegram; 1915 Huger. When the telegram was introduced in evidence it had also written on it the words "accepted subject to delay". There was conflict in the testimony as to whether these words were added by the defendant's agent just before plaintiff's representative left the office, after being informed that it was accepted subject to delay, or was added some days thereafter without the knowledge of plaintiff or her agent. The telegram was transmitted to the Lithonia office promptly, and was received there that night by one acting as railroad night operator, who did not attempt to deliver, but placed it on the desk of the day operator, who was to go on duty at seven o'clock next morning. The regular office hours at Lithonia, Ga., were from 7:00 A. M. to 7:30 P. M. There was no evidence that these hours were unreasonable. Lithonia was then a town of some twelve or fourteen hundred inhabitants and the principle industry was granite work. Burnell Bolton was a stone cutter and had been engaged there as such for six or seven weeks, working for Evans & Davidson, contractors, whose office was about two blocks from the telegraph office; and was boarding at the Mitchell boarding house about one-quarter of a mile from the telegraph office. As already referred to, testimony was admitted to the effect

that plaintiff about a week before had instructed a person whom he regarded as the telegraph operator, and who worked in the same office and had been seen by him to use the telegraph instruments, that his mother-in-law was sick, that he was looking for a telegram concerning her, and informed him where he could be found, either at Evans & Richardson's stone shed or at the Mitchell boarding house. According to the testimony for the defendant, the day operator going on duty on the morning of July 29th was informed of the telegram and at 7:10 or 7:15 gave the same to a messenger for delivery. The messenger in his efforts to find the addressee went to the hotel, the postoffice and several stores, making inquiries and also inquired of several persons he met on the street, and after about an hour returned the telegram to the operator, who sent him out again to try Jordan's store, but without being able to locate Bolton. It appears also that the messenger used the telephone and made inquiries of "central" and of the "Granite Company" office. The messenger also testified that about nine o'clock that morning he went to the office of Evans & Richardson to make inquiry, but that no one was in the office. The plaintiff Bolton testified that Evans & Richardson were both in town that morning making out a pay roll for one hundred men. The messenger did not go to the Mitchell boarding house, although he knew there was such a boarding house and that stone cutters boarded there, nor did he attempt to find the addressee at any of the work sheds.

At 8:15 that morning, the Lithonia office received another telegram from Burnell Bolton, saying, "Mother died last night, funeral 6 P. M." The agent took both telegrams to the post office and mailed to the addressee and called the attention of the postmaster to the importance of delivering them. There was no evidence that any service message, as required by rule 56 of the company, was ever sent by the receiving office to the sending office for a better address. No request was made of Mrs. Bolton for a better address. The telegrams were never received by Bolton. In conse-

quence of a letter received Saturday afternoon, July 29th, Bolton took a train for Columbia, S. C., and reached there Sunday morning. The funeral took place about 4 o'clock Saturday afternoon.

Assuming for the purpose of this question that there was evidence showing that plaintiff suffered mental anguish as the proximate result of defendant's negligence, we think there would be no error in submitting also to the jury the question whether the misconduct of the defendant was wanton or wilful. If it be true that defendant's agent was informed of the place where Bolton could be found and made no effort whatever to seek him there, and failed utterly to deliver so urgent a message, but placed it in the post office before seeking a better address or even inquiring at such obviously likely places as Evans & Richardson's office and Mitchell's boarding house, then it could hardly be so clear a case of inadvertence as to warrant the Court in taking from the jury the inquiry whether defendant's conduct was so recklessly disregardful of duty as to warrant an inference of wantonness or wilfulness. In the absence of undisputed evidence showing a real effort to deliver, long delay in delivering a message is some evidence to go to the jury on the question of punitive damage. *Young* v. *Tel. Co.,* 65 S. C., 93, 43 S. E., 448; *Willis* v. *Tel. Co.,* 73 S. C., 385, 53 S. E., 639; *Roberts* v. *Tel. Co.,* 73 S. C., 523, 53 S. E., 985.

But the serious question in this case arises under the third subdivision of the sixth exception, which alleges error in the refusal to grant a new trial because there was no evidence that the delay in delivering the message deprived plaintiff, Susan Bolton, "of the presence of her husband at the funeral of her mother and his aid and consolation at that time," as alleged in the complaint. This question was not raised by motion for nonsuit or to direct a verdict as now required by new rule 27, adopted December 19, 1906, but as the case was tried before the adoption of the rule, it is not subjected thereto.

If it be true that defendant was under no obligation to deliver the message on the night of July 28th, and that whether it was negligent was to be determined by its acts or omissions after the day operator went on duty at 7 o'clock A. M., July 29th, then we think the only inference that could be drawn from the testimony is that if the telegram had been delivered with the greatest promptness after the day operator went on duty, Bolton could not possibly have been able to be present at the funeral at 4:00 P. M. on Saturday, for according to Bolton's testimony there was no train leaving Lithonia at or after 7 o'clock, A. M., that could have put him in Columbia earlier than 6:45 P. M., Saturday, too late for the funeral. There was no testimony whatever to bring the case within the rule discussed in the concurring opinion in *Hughes* v. *Tel. Co.*, 72 S. C., 524, viz., that a failure to postpone a funeral for the addressee's arrival may be among the proximate results of a failure to promptly deliver a telegram, in which case the evidence must show not merely that the addressee would have requested postponement but that postponement would have been made. Hence, mental anguish because of the absence of plaintiff's husband from the funeral, and the loss of his aid and consolation at that time, could not have been the result of the acts or omissions of defendant after 7 o'clock A. M. Saturday.

There was testimony that if the telegram had been delivered before 12 o'clock Friday night, plaintiff Bolton could have reached Columbia at 10:45 A. M. Saturday, or if it had been delivered before 4 o'clock Friday night, he would have reached Columbia at 2:45 P. M. Saturday, in time for the funeral. This makes it necessary to inquire whether there was any evidence tending to show that it was the duty of defendant to make an effort to deliver the message Friday night. The evidence tended to show that the office hours at Lithonia were 7:00 A. M. to 7:30 P. M., and there was nothing to show that these hours were unreasonable. There is no doubt that ordinarily telegraph messages are accepted for transmission subject to reasonable regulations as to office

hours, and that it is not the duty of the company to transact its business out of such hours, yet this general rule is subject to the limitation that the company may waive such regulations, or enter into a special agreement or undertaking to transmit and deliver out of such hours. *Bonner v. Tel. Co.,* 71 S. C., 311, 51 S. E., 117; *Harrison v. Tel. Co.,* 71 S. C., 391, 51 S. E.. 119; *Roberts v. Tel. Co.,* 73 S. C., 522, 53 S. E., 985; *Harrison v. Tel. Co.,* 75 S. C., 271.

There was evidence that the message was accepted for transmission under more than ordinary circumstances. According to the testimony in behalf of the plaintiff, it was received about 10 o'clock at night, and on plaintiff's request for immediate transmission, the message though originally written on a night message blank was changed by defendant's agent to a day message and a higher rate of compensation received therefor, and no notice was given that it was accepted subject to delay or that it might not be delivered to the addressee until next morning. The defendant's agent who received the message, when on the stand as a witness, was asked why she changed the message to a day message, said that it was written on a night blank and that plaintiff's agent said she "wanted the message to go through that night." She further explained that a day message meant to go at once, while a night message was not expected to go through that night, but was to be delivered next morning. It is contended these circumstances very strongly indicate a special undertaking to put the message through that night. The message was received at Lithonia some time after 10:32 P. M. Friday night, not by a stranger or intruder or one having no authority so to do, but by the railroad night operator, Mr. McCarthy, who was left in charge of the office by Mr. Towns, the agent of the Georgia Railroad and manager for the defendant company. The duty of McCarthy, the night operator, was to attend primarily to the telegraphing in connection with the railroad business, but he also generally received telegrams which came in on other business and placed them on the desk until the day operator

went on duty next morning whose attention he called to the same. It cannot, therefore, be contended that the message was received at Lithonia by one not authorized to do so. *Dowdy* v. *Tel. Co.*, 32 S. E. Rep., 802. In the absence of circumstances showing a special undertaking by defendant to put the message through that night, the mere receipt of the message by an agent of the defendant at the receiving office out of reasonable office hours would not entail the duty of prompt delivery until the arrival of the regular hour for opening the office. *Roberts* v. *Tel. Co.*, 73 S. C., 525; 53 S. E. 985. But we think that the circumstances tend to show such special undertaking, and that defendant failed in its duty in not making some effort to deliver the message that night. *McPeek* v. *Tel. Co.*, 107 Iowa, 356; 70 Am. St. Rep., 210; *Bright* v. *Tel. Co.*, (N. C.) 43 S. E. Rep., 843; *Carter* v. *Tel. Co.*, (N. C.) 54 S. E. Rep., 275; 27 A. E. Ency Law, 2d. Ed., 1038 and cases cited under note 6.

The agent of the defendant, who received the message at Lithonia, ought to have been informed by the transmitting office of the undertaking to put the message through that night, and if the Lithonia night operator, under the circumstances in which he was situated, could not with reasonable diligence have arranged for the delivery of the message, he should have informed the transmitting office, so that plaintiff might have been informed in order that she could make the necessary arrangements to meet the difficulty arising from a failure to deliver the message that night as contemplated.

Under this view there was not a total absence of evidence that plaintiff suffered mental anguish as the result of defendant's negligence, and the motion for a new trial was properly overruled.

The judgment of the Circuit Court stands affirmed.

MR. JUSTICE GARY *dissents on the ground that there was no testimony as to punitive damages.*

MR. JUSTICE WOODS *dissents on the ground that he thinks there was no evidence to support a verdict for punitive damages.*