6543

### BUTLER v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—MENTAL ANGUISH—AFFINITY.—In suit for mental anguish suffered by the husband, caused by failure of his brother-in-law to be with him after death of wife and to administer comfort and consolation occasioned by negligence and wilfulness of telegraph company in failing to deliver a message promptly, there can be no recovery unless it is affirmatively shown that the company was informed at time message was delivered for transmission, from sources other than the message, of the peculiarly tender relations sustained by the parties related by affinity.

2. IBID—IBID.—PUNITIVE.—There being uncontradicted evidence of efforts to deliver a telegram, there is no basis for punitive damages for wilfulness in not delivering.

Before ALDRICH, J., Greenville, March Term, 1906. Reversed.

Action by C. P. Butler against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley* and *Jos. A. McCullough,* for appellant. *Messrs. Evans & Finley* and *Jos. A. McCullough* cite: *Telegraph company is only liable for such damages as could reasonably be anticipated:* 72 S. C., 290, 120; 70 S. C., 422. *If there be an effort to deliver there is no basis for punitive damages for failure to deliver:* 72 S. C., 119; 73 S. C., 523; 65 S. C., 93; 75 S. C., 182. *If relationship be by affinity proof of peculiar tender relations and notice thereof is necessary:* 27 Ency., 1065; 90 Am. St. R., 92; note 68 Am. Sa. R., 826; 54 S. W. R., 829, 830.

*Messrs. Cothran, Dean & Cothran,* contra, cite: *The terms of the statute are sufficiently broad to include a case like this:* 71 S. C., 29; 27 Ency., 1076; 59 L. R. A., 398; 43 S. E., 841; 38 S. E., 294; 21 S. E., 493; 34 L. R. A., 431.

May 22, 1907. The opinion of the Court was delivered by

MR. JUSTICE GARY. This case arises out of the failure to deliver a telegram promptly.

The complaint in substance alleges that on November 19, 1904, C. P. Butler, brother-in-law of W. C. Foster, delivered to the defendant's agent at Greenville, a telegram signed by him and addressed to W. C. Foster, at Greer, S. C., reading, "My wife is dead, let Ash know, come tonight;" that the charges were prepaid and the defendant undertook to transmit and deliver the telegram; that the message itself notified the defendant of the urgent necessity for prompt transmission and delivery, and of the damages and loss which a failure would cause to plaintiff; that the wife of C. P. Butler was W. C. Foster's sister, and "Ash" was H. A. Foster, a brother; that the defendant so negligently, recklessly, wantonly and maliciously acted in the premises that although

the message was received by it for transmission about 5 P. M., November 19th, 1904, and transmitted to Greer, it was allowed to remain there undelivered and without notice to the addressee, who was a resident of Greer, within a few hundred yards of the telegraph office, well known throughout the town and to the agent of the defendant, until about 11 o'clock the next day, at which time it was delivered to him in person, he having called at the office for it; that if the message had been reasonably delivered, he and his brother "Ash" would have gone to C. P. Butler's, where their sister was lying dead, and would have administered to the family comfort and consolation; that he was in like manner deprived of the comfort and consolation which he would have received from them under the circumstances; that he was greatly distressed in mind and body, mortified and humiliated, to his damage $2,000.

The jury rendered a verdict in favor of the plaintiff for $400, and the defendant appealed.

The presiding Judge was requested to charge the jury as follows: "If the relationship is by affinity only, and I charge you that such is the relationship of the parties here, there can be no recovery for mental suffering, resulting from a failure to transmit, or a delay, unless it is affirmatively shown that the company was informed, from other sources than the message, of the peculiar tenderness of the relations sustained by the parties to each other."

The presiding Judge refused the request, but charged in effect that when an action is brought by a person related merely by affinity, it is not essential to a recovery that the telegraph company should have notice of the special relationship between the parties, at the time the message is filed for transmission; and these rulings are assigned as error.

This is not a case in which the plaintiff was prevented, by the failure to deliver the message promptly, from being present at the bedside of another in sickness, or from attending a funeral, but is based upon the mental anguish suffered

by the husband of the deceased, caused by the fact that his brothers-in-law were not with him in his hours of sorrow.

Section 2223 of the Code of Laws in regard to mental anguish, is as follows: "All telegraph companies doing business in this State, shall be liable in damages for mental anguish or suffering, even in the absence of bodily injury, for negligence in receiving, transmitting or delivering messages. Nothing contained in this section shall abridge the rights or remedies now provided by law against telegraph companies, and the rights and remedies provided for by this section, shall be in addition to those now existing. In all actions under this section the jury may award such damages as they conclude resulted from negligence of said telegraph companies."

In *Cashion* v. *Tel. Co.*, 31 S. E. (N. C.), 493, it was held that mental anguish entailed by the non-arrival of a brother-in-law, in consequence of negligent delivery of a telegram, announcing the death of the sender's husband, must be affirmatively proven in order to recover; it is not presumed, as in case of a husband or wife or near blood kindred.

In a note to the case of *Tel. Co.* v. *Ayers,* 90 Am. St. Rep. (Ala.), 92, it is said: "In the close relationship of life, such as husband and wife, parent and child, and brothers and sisters, tender ties of affection exist, and mental anguish may be presumed as a natural consequence, when they are injuriously affected by the negligence of another; but such presumption is not made in the more distant relations of life, such as that of brother-in-law or friend. It must then be a matter of proof."

The rule is thus stated in 27 Enc. of Law, 1065: "If the relationship is by affinity only there can be no recovery for mental suffering, resulting from a failure to transmit or a delay, unless it is affirmatively shown that the company was informed, from other sources than the message, of the peculiar tenderness of the relations sustained by the parties to each other."

The Court in the case of *Arial* v. *Tel. Co.,* 70 S. C., 418, 422, 50 S. E., 6, thus construes the statute: "The statute was not intended to make the company liable in all cases for mental anguish and suffering, where there was negligence in receiving, transmitting or delivering messages. In order to render the company liable in damages for mental anguish, the suffering must have been the direct, natural and proximate result of its negligence in receiving, transmitting or delivering the message. The message must show upon its face, or the company must have knowledge of such facts as will enable it to foresee that the failure to perform its duty may reasonably be expected to result in mental suffering. The company is not liable in damages for mental anguish, when it was merely *incidental* to the failure to perform its duty, as in such cases the suffering could not be reasonably anticipated, and was not a result which, it could be said, the parties had in contemplation in entering into the contract. The main object of the messages which the plaintiff sent to his uncles was to inform them of his father's extreme illness, in order that they might come at once to his bedside. The information was intended for their benefit, and there was not even a request for an answer to those telegrams. The messages, which the uncles sent to the plaintiff, were merely intended to let him know their determination as to coming. The uncertainty under which the plaintiff labored as to their coming, was a mere incident in connection with the messages."

See, also, *Rogers* v. *Tel. Co.,* 72 S. C., 290, 51 S. E., 773, and *Poteet* v. *Tel. Co.,* 74 S. C., 491.

The principles indicated in the case of *Hadley* v. *Baxendale,* 9 Exch., 341, are thus succinctly stated in section 14 of Woods' Mayne on Damages: "First, That damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable. Second. That damages which would not arise in the usual course of things from a breach of contract, but which do arise from circum-

stances peculiar to the special case, are not recoverable, unless the special circumstances are known to the person who has broken the contract." This language is quoted with approval in *Traywick* v. *Ry.,* 71 S. C., 82, 50 S. E., 549.

The case of *Mood* v. *Tel. Co.,* 40 S. C., 524, 19 S. E., 67, shows that special damages are not recoverable unless expressly alleged, and that those damages are special that do not necessarily result from the wrongful act.

From the foregoing authorities it will be seen, 1st. That a plaintiff can only recover such damages as are the direct and proximate result of a wrongful act on the part of the defendant; 2d. That mental anguish by a brother-in-law may be the result naturally and reasonably to be anticipated from the failure to deliver a telegram, but there is no presumption that such injury has been sustained; 3d. That if in the particular case, one related merely by affinity sustains damages, they are special, and the defendant must have notice of the facts from which it may be reasonably expected they would arise, at the time the message is delivered for transmission. There was error, therefore, in refusing the request.

The next question that will be considered is whether there was any testimony tending to sustain the cause of action based on punitive damages.

There was testimony to the effect that after the telegram was received, about 5:30 Saturday afternoon, the operator, between that and 7 o'clock, took the telegram and inquired of the station hand, the clerk, and agent across the railroad and a policeman, if they knew anything about W. C. Foster, and they all replied in the negative; that he tried twice to get Victor Mill over the phone, and without success; that he asked several parties standing around the platform, whose names he could not remember (he being a stranger there himself), and received no information; that when he went off duty that night he called the night operator's attention to the message and his effort to deliver it, and requested him if information was received

locating the said W. C. Foster, to deliver the message.   The next morning, between office hours, he inquired of three other parties, one of whom was the chief of police, and as a result of this effort he succeeded in locating the said W. C. Foster.

In the case of *Roberts* v. *Tel. Co.,* 73 S. C., 520, 523, 53 S. E., 985, the Court says : "It is sometimes difficult to draw the line between a *scintilla* of evidence and no evidence on the subject of wilfulness, wantonness and recklessness.   It was held in *Young* v. *Telegraph Co.,* 65 S. C., 93, 43 S. E., 448; *Machen* v. *Telegraph Company, supra,* and *Willis* v. *Telegraph Company, ante* 379, that long delay in the absence of effort to deliver, is evidence to go to the jury, on the question of punitive damages.   But here there was un-disputed evidence of some effort to deliver.   It may be the effort was not sufficiently vigorous to repel the imputations of negligence, but on the whole we think the Circuit Judge was right in holding the mere delay was not sufficient to go to the jury on the issue of wilfulness, wantonness or reck-lessness in view of the evidence of efforts to deliver."

The case under consideration is governed by the principle just stated, and the exceptions raising this question are sus-tained.

These views practically dispose of all the questions in-volved.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.