### 7359

### GLENN v. WESTERN UNION TEL. CO.

1. TELEGRAPH COMPANIES—WILFULNESS.—Failure to deliver a telegram; the acts of the agent at terminal office; evidence of efforts of agent at terminal office to deliver, and of efforts of agent at initial office to deliver service message, which was inferentially contradicted; warranted sending issue of wilfulness to jury.
   *Divided Court.*
2. IBID.—FREE DELIVERY LIMITS.—Request as to right of carrier to establish free delivery limits should have been given, but appellant was not prejudiced by such refusal as upon request of juror the Court instructed them as to the right to establish free delivery limits and as to delivery within more favorable to appellant than it was entitled to.
3. NEW TRIAL—VERDICT.—This Court cannot consider alleged errors of trial Court in refusing new trial because of excessive verdict.
   *Divided Court.*

Before SHIPP, J., Lexington, Fall term, 1908.   Affirmed.

Action by Baisy Glenn and L. L. Glenn against Western Union Telegraph Company. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Nelson & Nelson* and *Efird & Dreher,* for appellant. *Messrs. Geo. H. Fearons* and *Nelson* cite: *Issue of wilfulness should not have been sent to jury:* 73 S. C., 520; 77 S. C., 148; 79 S. C., 109; 82 S. C., 87; Jones Tel. & Tel. Cas., secs. 296-8; 18 Am. St. R., 153. *Error to refuse request as to free delivery limit:* 74 S. C., 300; Jones Tel. & Tel. Cas., sec. 296; 55 Ill. App., 659. *Court should decide if verdict excessive:* 69 S. C., 531; 73 S. C., 525; 77 S. C., 113.

*Messrs. Graham & Sturkie,* contra, cite: *Message should have been sent out by special messenger:* 74 S. C., 304. *Wilfulness properly sent to the jury:* 77 S. C., 399, 122, 56; 79 S. C., 163; 75 S. C., 512. *Plaintiff entitled to exemplary damages:* 74 S. C., 305; 81 S. C., 436. *No evidence to show contract endorsed on back of message:* 75 S. C., 512. *Erroneous reasons for granting a new trial do not affect the order:* 73 S. C., 274; 78 S. C., 364; 79 S. C., 66. *Judgment will not be reversed for excessive verdict:* 78 S. C., 552; 71 S. C., 95; 78 S. C., 562. *Plaintiff entitled to compensatory damages:* 80 S. C., 208.

November 3, 1909. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. This is an action for damages for the negligent and wilful failure of the defendant to deliver the following prepaid telegram: "Edmund, S. C., 3-11, 1907. To Mrs. H. E. Dollerson, Holly Hill, S. C. Hatty got burnt Saturday. Come, if you can, at once. Answer at once. (Signed) L. L. Glenn."

It is alleged in the complaint, and plaintiff's testimony tended to show: That Hatty was the child of the plaintiff,

and Mrs. Dollerson was her aunt, who occupied the relation of mother to her; that when the message was filed the defendant's agent at Edmunds was informed of the relation existing between plaintiff and Mrs. Dollerson, and that the message was for the benefit of plaintiff, and that it was of the utmost importance that it be delivered promptly; that Mrs. Dollerson lived near Holly Hill, and could be reached by telephone; that the agent promised to deliver the message immediately; that Mrs. Dollerson was at home on March 11th, and continuously thereafter for several days; that the message was never delivered to her. Plaintiff's testimony tended to show also that the agent at Edmunds promised her husband to send the message and get an answer within an hour; that her husband waited there more than an hour, but no reply came, and he went back home; that Mrs. Dollerson had been postmistress at Conners, a station on the railroad between two and three miles from Holly Hill, about fifteen years, and was well known in Holly Hill. Mrs. Dollerson testified that she was at home on March 11th, and continuously for several days thereafter; that if she was absent from her home at all, it was only for a couple of hours, but that she was at home every night; that the child died on the 16th and was buried on the 17th of March, and if Mrs. Dollerson had received the message on the 11th, or any day thereafter up to the death of the child, she could and would have gone to her niece, and could have gotten to her the next day after receipt of the message; that plaintiffs lived about two miles from Edmunds, on a daily mail route, their address being Gaston, R. F. D. No. 2; that no reply to the message, nor any service message, was ever received by plaintiffs; that plaintiff, Mrs. Glenn, suffered mental anguish on account of the failure of her aunt to come to her in her distress.

The defendant's agent at Edmunds denied that plaintiff's husband told him of the relation existing between plaintiff and Mrs. Dollerson, or that the message was for the benefit

of Mrs. Glenn, or that Mrs. Dollerson lived at Conners. He testified that the message was sent at 1:06 o'clock a. m. on the 11th. It was received at Holly Hill at 12 m. At 4:05 p. m. the following service message was sent, and received at 5:25 p. m.: "Dated at Holly Hill, S. C., 3-11-07. To Edmunds, S. C. Yours date Dollerson, signed Glenn, undelivered. Party lives about three miles from office. Phone line down. Holly Hill." Defendant's agent at Edmunds testified that he did not know where plaintiff lived, but inquired for plaintiff's husband of parties at Edmunds, and failing to find him mailed the service message to his address, as above, postage prepaid. Defendant's agent at Holly Hill testified that he knew Mrs. Dollerson by reputation, as postmistress at Conners; that he tried to telephone the message to her immediately upon receipt of it, but could not do so because the line was down, but that he did not receive instructions from the sending office to telephone it to her; that he also made inquiries of persons in Holly Hill to find some one by whom to send it to her, but finding no one, he tried again, at 3:30 p. m., to telephone it to her, and, the line still being down, he sent the service message above, and mailed the message to her at Conners, and made no further effort to deliver it, though he realized its importance.

The jury found for plaintiff $400. After judgment entered, the defendant appealed.

The exceptions make the following points:

1. That his Honor erred in refusing defendant's request to charge that there was no evidence to warrant a verdict for punitive damages.

2. In refusing defendant's 11th request, to wit: "A telegraph company has the right to establish free delivery limits for the delivery of messages at terminal offices, and to make an additional charge for delivery beyond such free delivery limits, and the sender cannot require that the telegraph company deliver the message beyond such free delivery limits, upon payment of an additional charge, unless the sendee

lives within a reasonable distance from the office of delivery."

3. In refusing defendant's motion for a new trial on the ground that there was no evidence to warrant a verdict for punitive damages, because his Honor based his refusal upon the uncertainty, in his mind, as to what "Mrs. Dollerson might say about one or two things."

4. In refusing the motion for a new trial on the ground that the verdict was excessive.

In this case there was evidence tending to show a total failure to deliver the message. The defendant contends that, as there was undisputed evidence of *some* effort to deliver it was error to submit the question of punitive damages to the jury. In *Young* v. *Tel. Co.*, 65 S. C., 93, 43 S. E., 448, this Court held that a delay of fourteen hours in the delivery of a message, there being testimony tending to show that no effort to deliver was made during that time, warranted an inference of a reckless disregard of plaintiff's rights. In *Roberts* v. *Tel. Co.*, 73 S. C., 523, 53 S. E., 985, the Court used this language: "It was held, in *Young* v. *Tel. Co.*, 65 S. C., 93, 43 S. E., 448; *Machen* v. *Tel. Co.*, *supra*, and *Willis* v. *Tel. Co.*, *ante*, 379, that long delay, in the absence of effort to deliver, is evidence to go to the jury on the question of punitive damages. But here there was *some* effort to deliver. It may be that the effort was not sufficiently vigorous to repel the imputation of negligence, but, on the whole, we think the Circuit Judge was right in holding that *mere delay* was not sufficient to go to the jury on the issue of wilfulness, wantonness or recklessness, in view of the evidence of efforts to deliver." (Italics mine.) In *Machen* v. *Tel. Co.*, 72 S. C., 264, 51 S. E., 697, the Court used this language: "The long delay in delivering the death message in question, coupled with the absence of evidence showing *any real effort* to deliver the message, required submission to the jury as to the matter of punitive damages." (Italics mine.) In *Bolton* v. *Tel.*

*Co.,* 76 S. C., 535, 57 S. E., 543, the Court used this language: "In the absence of undisputed evidence showing a real effort to deliver, long delay in delivering a message is some evidence to go to the jury on the question of punitive damages."

We cannot go to the extent of saying that undisputed evidence of *any* effort to deliver will be sufficient to repel the presumption which arises from long delay. The evidence of the effort to deliver must, in the first place, be undisputed, and, second, it must be such that an inference of a conscious failure to discharge the duty of prompt delivery could not reasonably be drawn from it, when considered in the light of all the other evidence in the case.

In the case of *Campbell* v. *Tel. Co.,* 74 S. C., 303, 54 S. E., 571, this Court held that when a person to whom a telegram is addressed resides beyond, but within a reasonable distance of, the free delivery limits of the terminal office, it is, nevertheless, the duty of the company to deliver it by special messenger, or notify the sender that it would not do so unless payment of the special charge for doing so was made or guaranteed. In *Lyles* v. *Tel. Co.,* 77 S. C., 181, 57 S. E., 725, the Court says: "When a telegraph company discovers that the person for whom the message is intended lives beyond the free delivery limits, its duty is not at an end, unless the sender, with notice of the claim for additional compensation, has failed or refused, on demand, to pay it." See also *Lyles* v. *Tel. Co., ante,* 1.

It will be noticed that the service message in this case makes no demand for payment, or guarantee of payment, for delivery beyond the free delivery limits. It may be said, however, that the agent at Holly Hill made the very efforts to deliver that were contemplated by the parties when the telegram was filed, for the plaintiff's husband testified that when he filed the message he told the agent at Edmunds that they could get Mrs. Dollerson over the phone, without

any trouble, or anybody would be glad to carry it to her. But in considering the conduct of the agent at Holly Hill, and his efforts to deliver, we must do so in the light of the law, as declared by this Court, as to his duty in the premises, and also in the light of his own testimony, as to what instructions he received from the agent at Edmunds as to making delivery. This question was asked him: "When you received this telegram over the wire, did you receive any instructions about delivering it over the phone?" A. "No instructions." When we consider the urgenecy of the message, as appeared upon its face, and the request of the sender to the sendee to answer at once, which also appeared on the face of the message, and the testimony of plaintiff's husband as to the information he gave the agent at Edmunds as to the relation of the plaintiff and Mrs. Dollerson, and, especially, that it was of the utmost importance that the message be delivered at once, and the agent's promise to him to send it immediately and get an answer within an hour, and his failure to give the agent at Holly Hill any instructions as to delivery, if that agent's testimony be true, and the delay of the agent at Holly Hill in sending the service message, from 12 o'clock m. until after 4 o'clock p. m., though, according to his own testimony, he knew, immediately after receipt of the message, that the telephone line was down, and his failure to deliver by special messenger, or to make demand for payment, or guarantee of payment, therefor in the service message, as he is required by law to do, and his failure to make any further efforts to deliver after mailing the message, in connection with the testimony that neither the message nor the service message, which the agents claim to have mailed, were ever received by the addressees, we cannot say there was no testimony from which a reasonable inference could not be drawn of a reckless disregard of the rights of the plaintiff.

But it may be argued that the failure of the agent at Holly Hill to demand payment, or guarantee of payment, for

11—84

delivery by special messenger could have made no difference, as that message was never delivered. But he did not know, when he sent it, that it would not be delivered; and, in considering his mental attitude, we must do so in the light of what he then knew, and of his duty under the law.

Moreover, in this case, it cannot be said that the evidence of efforts to deliver was altogether undisputed. The agent at Holly Hill testified that he tried to get Mrs. Dollerson over the telephone twice, but could not, as the line was down. Mrs. Dollerson testified that, at that time, she had telephone communication with Holly Hill, though she did not say that the line was in working order that day. She might have been asked whether the line was in working order that day, or the next day, for the agent did not know how long the condition of the child would last; or other testimony might have been introduced to show that the telephone line was down, for the agent did not say how he knew it was down. We suppose he inferred it was from the fact that he could not get Mrs. Dollerson, and his testimony that it was down is worth no more than Mrs. Dollerson's that she had telephone communication with Holly Hill. The burden of proof as to that matter was on the defendant.

In *Poulnot* v. *Tel. Co.*, 69 S. C., 549, 48 S. E., 622, this Court said: "When the plaintiff shows that the defendant has failed in its duty to deliver promptly, it is incumbent on the defendant to explain its failure." In *Arial* v. *Tel. Co.*, 70 S. C., 423, 50 S. E., 6, the Court said: "There was testimony tending to show that the telegrams were not delivered within a reasonable time. If they were not delivered within a reasonable time, then there was a presumption of negligence on the part of the company, and the burden of proof was cast upon it to show that the unreasonable delay was not due to its negligence. *Poulnot* v. *Tel. Co.*, 69 S. C., 545, 48 S. E., 622."

Again, the testimony that the messages were never received by the parties to whom they were addressed

through the mail makes an issue of fact. Evidence that they were mailed, properly addressed, with postage prepaid, raises a presumption that they were received by the addressees; but when receipt of them was denied, it raised as strong a presumption that they were never mailed, and it was for the jury to say whether they were or not. 22 Am. & Eng. Enc., 1252-4. If the jury concluded that they had not been received, they had the right to conclude that the testimony of the agents that they had been mailed was false, and to apply to their testimony the maxim, *"Falsus in uno, falsus in omnibus,"* and to disregard their other testimony as to efforts to deliver.

In *Poulnot* v. *Tel. Co.,* 69 S. C., 549, 48 S. E., 622, the following language from the case of *McPeek* v. *W. U. Tel. Co.,* 43 L. R. A. (Iowa), 214, is quoted with approval: "The defendant asserts that no negligence in failing to deliver the message has been shown. If the testimony of Ridgeway be accepted as true, it might be that, in loudly rapping on the door, repeatedly, and receiving no response, he exercised reasonable diligence. This is in dispute. The daughter of the plaintiff testified that she was at his home from 9 o'clock p. m., and did not retire until a half hour later, and that she heard no noise at the door. Mr. and Mrs. McPeek also testified that they heard no such noise, and that they would have been likely to have heard it had there been any. Whether Ridgeway made any effort to rouse the family is put in question by this evidence. If he was advised of the importance of the message, as claimed by the plaintiff, he was bound to exercise due diligence accordingly, and whether he did so was for the determination of the jury."

This Court has so frequently held that it has no jurisdiction to consider disputed questions of fact in a law case that it is needless to cite the cases.

In *Stembridge* v. *Ry.,* 65 S. C., 444, 43 S. E., 968, this Court said: "When a motion of this kind is addressed to the

Court, a delicate duty is involved to decide properly when the evidence lies close to the dividing line between negligence, which is gross, and misfeasance, which is wanton or wilful. Generally it is best for the trial Court in such cases to leave it to the jury to draw the proper inference. A nonsuit would be proper as to a cause of action only when it is clear that no possible view of the testimony would warrant the jury in drawing an inference supporting such cause of action." *Griffin* v. *Ry.*, Id., 128; *Marsh* v. *Tel. Co.*, Id., 438.

We cannot say that a reasonable inference of a conscious failure to perform the duty of prompt delivery could not have been drawn from the testimony.

The defendant's 11th request was a sound proposition of law, and should have been charged. But we are satisfied that defendant suffered no prejudice by its refusal. In the first place, it could not reasonably be contended that three miles would be an unreasonable distance to require defendant to send messages beyond its free delivery limits, upon payment, or guarantee of payment, of the special charge therefor. Ordinarily what is a reasonable distance would be a question of fact for the jury, but in matters of distance, as in matters of time, it may be so long or so short, that the Court can say, as a matter of law, what is reasonable or unreasonable. 23 Am. & Eng. Enc., 585. Again, the error was cured by his Honor at the last of his charge. The foreman of the jury asked: "How far have they a right to send it from the office; what is the distance?" His Honor replied: "I can't state to the jury what the facts of the case are, but I charge you this: That if the testimony shows there was a limit, if there is any testimony going to show that the company had free delivery limits, then the company is not bound to go any farther than where their reasonable rules would require, if you think there was reasonable rules on the subject; if you find that the testimony, if there was any testimony on that subject,

if they had rules, and the rules were reasonable, the company is not bound to go beyond a reasonable rule that governed these things." The charge in that respect was too favorable to the defendant, in that it limited its duty to deliver within its established free delivery limits. The defendant's agent at Holly Hill testified that the free delivery limits was half a mile.

The exception that his Honor based his refusal of defendant's motion for a new trial on the uncertainty, in his mind, as to what "Mrs. Dollerson might say about one or two things," cannot be sustained. We think appellant has misconstrued the language of his Honor. It appears, from what he said, that he refused the motion because there was some evidence to support the verdict, though he expressed some doubt about it.

This Court has so frequently held that it cannot consider alleged errors of a Circuit Judge in refusing a motion for a new trial, on the ground that the verdict is excessive, that the fourth ground of appeal requires no further consideration.

Judgment affirmed.

MR. JUSTICE WOODS *dissents, and concurs in the opinion of the Chief Justice.*

MR. CHIEF JUSTICE JONES. I think there should be a reversal on the ground that there was no evidence of a wilful breach of duty on the part of defendant, and, therefore, the matter of punitive damage should not have been submitted to the jury.

The message was promptly transmitted to the terminal office, and the agent there ascertained that the sendee lived at Conners, about two and a half miles beyond the free delivery limits. He made two efforts to transmit over the telephone and found that the line was down, and notwithstanding his positive statement that the line

was down, there was no contrary testimony.   Plaintiff did
testify that she had a telephone in her house, and had tele-
phone connection with Holly Hill, the terminal station, but
the manifest meaning of her testimony was that she had
such connection as having a connecting telephone in her
house would give, and not meaning that the line was then
in operation.   There was no testimony that any message
was transmitted over that line on the day the message was
sent, or on any day thereafter.

If the line had been in operation that day, or soon there-
after, surely some one could have been produced to say so.

Furthermore, while plaintiff testified, in a general way,
that she was at her house on March 11, 1907, and for days
thereafter, she modified that by saying she had not spent a
night from home, that she might have been off a couple of
hours, and had not been away farther than one-half mile
from her home.   It cannot, therefore, be said that plaintiff's
testimony contradicts the testimony of the defendant's agent
that he made the attempts to communicate with her over
the telephone and failed.   The Holly Hill agent made
further inquiries whether any parties were in Holly Hill
that would deliver the message, and found no one.   He then
sent back a service message to the initial office, Edmunds,
stating that the message had not been delivered, the party
being three miles from office, and phone line down.   He
further testified that he then mailed the message in the post-
office, addressed to the plaintiff at her postoffice.   The
plaintiff testified that she did not receive this letter.   The
case is peculiar, in that the sender of the message also lived
without the free delivery limits of the initial office.   The
sender lived two miles out from the initial office, on a settle-
ment road having no name, and he left no address.   It is
not disputed that the service message was sent back to the
initial office, and that the agent there made inquiry as to
where the sender could be found, and the agent testified that
on hearing that his address was Gaston, R. F. D. No. 2, he

mailed the service message in the postoffice, postage prepaid, to the sender at such address. The sender, however, testified that he did not receive the letter, and, further, that he never made any inquiry at the defendant's office in reference to the message. It further appears that the sender of the message, although he knew the sendee lived two and a half miles from the terminal office, did not contemplate a demand for extra charges for special delivery, as he testified that he told the agent of the initial office that the message could be delivered over the phone without any trouble, or anybody would be glad to carry it to her.

It thus appears that there was uncontradicted evidence of a real effort to deliver the message in the very manner contemplated by the parties at the time.

The plaintiff offered no testimony tending directly to show a wilful breach of duty, and only relied upon the presumption of wilfulness that would arise upon proof of a long unexplained delay in delivering or an unexplained failure to deliver. The case falls well within the rule of those cases which hold that undisputed evidence of a real effort to deliver repels the imputation of a wilful disregard of duty that might otherwise be inferred from a long unexplained delay or failure to deliver. *Roberts* v. *Tel. Co.*, 73 S. C., 520, 53 S. E., 985; *Butler* v. *Tel. Co.*, 77 S. C., 148, 57 S. E., 757; *Johnson* v. *Tel. Co.*, 82 S. C., 87.